(Decided June 19th, 1877.)

## Lewis W. Keyser *vs.* John N. Rice.

### JURISDICTION.

*Construction of Art. 4, sec. 2, of Constitution of U. S.—"Privileges and Immunities"—Jurisdiction in Equity—Domicil—Conflict of Laws—Power of State to compel obedience to its laws by its own citizens even beyond its territorial limits—Attachment—Exemption—Injunction.*

The 2nd section of Article 4 of the Constitution of the U. S., has only recently been considered a restriction on the Legislatures of the several States, in regard to contracts between their own citizens and the remedies proper for their enforcement.

Courts have been extremely cautious in defining the meaning of a clause couched in such general terms as the 2nd section of Art. 4 of the Constitution of U. S.

It has been said to mean that the citizens of all the States shall have the peculiar advantage of acquiring and holding real and personal property, and such property shall be protected and secured by the laws of the State in the same manner as the property of the citizens of the State.

Also, that such property shall not be liable to any taxes or burdens to which the property of the citizens of the State is not liable.

Also, that it protects and secures personal rights.

Jurisdiction in equity does not depend upon the *situs rei,* nor the residence of the defendant.

Where property in controversy is within the limits of the State, and the claimant resides abroad, the Court of Chancery has undeniable jurisdiction.

Where the defendant is within the State and the property in contest is beyond its limits, although the proceeding is *in rem,* there is no want of jurisdiction.

As to that species of property which has no "*habitat,*" but follows the person, such as debts or *choses in action,* jurisdiction as to the person must include jurisdiction as to the thing.

By the Constitution of 1867, the General Assembly is required to pass laws exempting from execution a reasonable amount of the debtor's property, not to exceed five hundred dollars.

By the Act of 1874, ch. 45, amending sec. 36, Art. 10 of the Code of Public General Laws, it is enacted that no attachment shall lie against the wages, or hire of any laborer, or employé not actually due at the time of the attachment, and unless the amount so due shall exceed the sum of one hundred dollars.

From considerations of public convenience the Courts have long since decided that attachments would not lie against the salaries of public or municipal officers.

The power of the State to compel its own citizens to respect its laws, even beyond its own territorial limits, is supported by a great preponderance of precedent and authority.

Courts of Chancery, upon a proper case being made, have authority to restrain persons within their jurisdiction from prosecuting suits either in the Courts of the States to which they belong, or in other States or in Foreign Countries.

This jurisdiction is not founded upon any right to control or interfere with the proceedings of other tribunals in other States, but on the clear authority vested in Courts of equity over persons within their jurisdiction.

It is against equity for a creditor to evade the laws of his own country in order to thereby obtain a preference over other creditors.

It is not intimated anywhere that the general guaranty of privileges and immunities to non-residents, designed as a protection against discrimination in favor of residents, is to operate as a limitation upon the inherent authority of the respective States over their own citizens. The questions are entirely distinct.

The intention to evade the laws of the State is necessarily presumed when the act is persisted in after knowledge, and still inchoate, after the protestation of the complainant and the process of the Court.

Rational creatures must be presumed to intend the necessary and inevitable consequences of their deliberate acts.

APPEAL from the Circuit Court for Allegany County, in Equity.

On the 6th of March, 1876, the appellant filed in the Circuit Court for Allegany County, sitting as a Court of equity, his bill, asking for relief by way of injunction, to restrain the appellee from the further prosecution, in Piedmont, W. Va., of an attachment, by which the latter sought to recover from him the sum of $31.25 due him as wages in Cumberland, Maryland, by the Baltimore and Ohio Railroad Company. On April 8th, 1876, the answer of Defendant was filed, denying the material allegations of the bill, and on the 12th August following, PEARRE, Judge, passed an order dissolving the preliminary injunction, after hearing an argument on an agreed statement of facts. This agreement was in effect as follows: that both the appellant and appellee were, at the date of the preparation of the agreement and the issue of the attachment, in West Virginia, citizens and residents of Allegany County, Maryland, Keyser, being an employé at Cumberland in the rolling mill of the Baltimore and Ohio Railroad Company, which was indebted to him for wages and hire, and on no other account in an amount less than $100 payable at Cumberland. That the appellee, although

no judgment had been rendered against Keyser, obtained from Sims, a justice of the peace, at Piedmont, W. Va., a writ of attachment and procured the same to be laid in the hands of the Baltimore and Ohio Railroad Company as garnishee, at Piedmont, for the purpose of securing the debt due him by the appellant, amounting to $31.25, contracted subsequent to March 3rd, 1874, the date of the passage of the Act of Assembly of 1874, ch. 45, under which the wages or hire of employés are in certain cases held exempt from attachment.

From this decision of the Court and the order thereon passed, dissolving the injunction, this appeal is taken.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, ALVEY and ROBINSON, J.

*Carroll Sprigg, Jas. A. Buchanan* and *John K. Cowen,* for the appellant.

Three questions are suggested by an examination of the record.

1. Has a Court of Maryland the power to enjoin one of its own citizens from prosecuting a suit in a foreign tribunal?

2. Under what circumstances will the Court exercise that power?

3. Are the circumstances of the present case of such a nature as to justify the exercise of that power of the Court.

1. In the exercise of this power, Courts of equity proceed, not upon any claim of right to interfere with, or control the course of proceedings in other tribunals, but the jurisdiction is founded on the clear authority vested in Courts of equity over persons within the limits of their jurisdiction and amenable to process, to restrain them from doing acts which will work wrong and injury to others. *Wn. & Tud. L. Cas. in Eq.,* vol. II, 1397, *4th Ed.; High*

*on Injunctions, sec.* 60 ; *Dehon vs. Foster,* 4 *Allen,* 545 ; *Bank vs. Rutland & B. R. R. Co.,* 28 *Vt.,* 476 ; *Hays vs. Ward,* 4 *Johns. Ch.,* 123.

2. And it matters not that the relief demanded affects property lying beyond the jurisdiction of the Court, for without regard to the situation of the subject-matter of dispute it considers the equities between the parties, and decrees *in personam* according to the equities, and enforces obedience to its decrees in *personam.* All that is necessary in such an event is, that inasmuch as the proceedings are *in personam,* the defendant should be subject to the authority of the Court and within reach of its process—and also that the complainant should show an equity. 2 *Story on Eq.,* secs. 899, 900 ; *Massie vs. Watts,* 6 *Cranch,* 148 ; *Penn vs. Lord Baltimore,* 1 *Ves., Sr.,* 444 ; *Mitchell vs. Bunch,* 2 *Paige,* 606 ; *Buchanan, et al. vs. Lorman, et al.,* 3 *Gill,* 51.

From the cases above cited it will be clearly seen that where the proceedings instituted by the person sought to be enjoined are likely to result in oppression, or work injustice to the complainant, it is the duty of the Court to intervene and forbid the perpetration of the wrong. "Extreme delicacy should not deter the Court from controlling the conduct of a party within its jurisdiction to prevent fraud. No rule of comity or of policy forbids it." *Vail vs. Knapp,* 49 *Barb.,* 305 ; *Great Falls, &c. vs. Worster,* 23 *N. H.,* 470.

The Act of Assembly of this State, 1874, ch. 45, declares that no attachment shall be issued by a citizen of this State to affect the wages or hire of a resident, (extended so as to include non-residents by the Act of 1874, ch. 230) of this State, unless the amount claimed and for which the attachment is issued exceeds $100, and it futhermore exempts in all cases from attachment, wages or hire in the hands of an employer to the extent of $100.

Such being the law of this State the appellee could not pretend to recover here by an attachment proceeding ; the

sum of $31.25 from the appellant, which by an exactly similar process, he attempts to secure in a foreign tribunal—it being admitted that the sum for which the writ of attachment was issued in Piedmont is less than $100, and that the amount due the appellant by the garnishee, his employer, is less than $100, and is due to him exclusively on account of wages or hire. As a necessary consequence of the action taken by the appellee, it must follow, that, although the sum for which the attachment is issued is less than $100, and although there is not due to the appellant a sum in excess of $100, the former will secure, unless the injunction be made perpetual, the only sum of money which the State of Maryland says he shall not touch, and that too by a procedure forbidden by the law of the State, in which both he and his debtor live. This is not only an evasion, but is also an open and direct violation of both the spirit and letter of the law of the land.

*B. F. M. Hurley*, for appellee.

*First.*—The bill of complaint in this cause does not present a case for granting an injunction, because the equities set forth are not in themselves ample for that purpose, and if such is not the case, the answer of the appellee fully denies all the circumstances upon which the equity of the bill is founded.

*Second.*—A Court of equity never will, against equity and good conscience, interpose by way of injunction to disturb a citizen in his effort to recover money honestly due him by lawful means in the Courts of another State, unless the justice of that Court can be impeached by facts, or on grounds of which the complainant could not avail himself at law in that tribunal, or when required to do so upon principles of public policy, or when there is an equitable question to be decided before the matter can be safely disposed of. *Craig vs. Ankeney*, 4 *Gill*, 225.

*Third.*—Where a party applies for an injunction against a creditor, who is seeking the payment of an honest debt

by due process of law, and admits that he owes the person to be enjoined, he ought to bring into Court the sum of money admitted to be due and unpaid, to be paid accordingly; otherwise, the Court of equity would be a handmaid to iniquity and injustice. For "he who seeks equity must do equity." *Hilliard on Injunctions,* 269; 28 *Verm.,* 470.

*Fourth.*—Citizens of the several States may sue in the Courts of Maryland, and such right is guaranteed under the first clause of the 2nd section of Article IV of the Constitution of the United States, which says: "The citizens of each State shall be entitled to all the privileges and immunities of the citizens in the several States;" and this gives the right to the citizens of Maryland to institute and maintain actions of any kind in the Courts of other States. *Ward vs. State of Md.,* 12 *Wallace,* 418; *Morgan vs. Neville,* 74 *Pa.,* 53; 4 *Washington C. C. Rep.,* 380; *Mead vs. Merritt & Peck,* 2 *Paige,* 381; *Peck vs. Jenness,* 7 *Howard,* 624, 625.

*Fifth.*—That the Mineral County Court of West Virginia, where the complainant has had the attachment proceedings named in his bill of complaint transmitted by his order, and where the proceedings are still pending, is not a Court of ordinary jurisdiction, of doubtful authority and of judicial rights; therefore it was and still is the duty of the appellant to appear before that tribunal and protect and vindicate himself in a proper and legal manner. *Gott & Wilson vs. Carr,* 6 *G. & J.,* 309 *and* 312; *Richardson, et al. vs. Mayor and City Council of Baltimore,* 8 *Gill,* 433.

*Sixth.*—That whether the appellee has the right at law to proceed by way of the attachment laws of West Virginia, is a legal question for that Court to determine, and not an Equity Court of Maryland, otherwise it would be restricting the rights of a citizen of Maryland within

much narrower limits than has heretofore been done, or than I think was ever designed.

Bowie, J., delivered the opinion of the Court. (Robinson, J., dissenting.)

The second section of the 4th Article of the Constitution of the United States, although construed in several cases, in the State and Federal Courts, has never (until very recently) as far as we are aware, been considered a restriction on the Legislatures of the several States, in regard to contracts between their own citizens, or the remedies proper for the enforcement of those contracts.

The Courts have been extremely cautious in defining the meaning of a clause couched in such general terms. (See *Conner vs. Elliott,* 18 *How.*, 593.) In the recent case of *Ward vs. The State*, 31 *Md.*, 279, this Court collected and cited the definitions of the meaning of this section, from various cases. In *Campbell vs. Morris*, 3 *H. & McH.*, 554, it was said to mean that the citizens of all the States shall have the peculiar advantage of acquiring and holding real and personal property, and such property shall be protected and secured by the laws of the State in the same manner as the property of the citizens of the State is protected. " It means such property shall not be liable to any taxes or burdens, which the property of the citizen is not subjected to. It may also mean that as creditors, they shall be on the same footing with the State creditor, in the payment of the debts of the deceased debtor." " It secures and protects personal rights."

In *Corfield vs. Corgell*, 4 *Wash. C. C. Repts.*, 381, Judge Washington said, it included the right of a citizen of one State to pass through or reside in any other State for the purpose of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of *habeas corpus;* to institute and maintain actions of any kind in the Courts of the State; to take, hold and dispose

of property either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the State.

The opinion of C. J. DAGGETT, in *Crandall vs. The State*, 10 *Conn.*, 344, is to the same effect.

All these instances imply that the citizen going from one State to another, shall be entitled to the privileges and immunities of a citizen in the State to which he goes, but they do not absolve him from the duties and obligations of a citizen to the State to which he belongs, and from which he went.

As long as a citizen belongs to a State, he owes it obedience, and as between States, that State in which he is domiciled, has jurisdiction over his person, and his personal relations to other citizens of the State.

Jurisdiction in equity, does not depend upon the "*situs rei,*" or the residence or non-residence of the defendant.

Where property in controversy is within the limits of the State, and the claimant resides abroad, the Court of Chancery has undeniable jurisdiction. *Carroll vs. Lee*, 3 *G. & J.*, 504.

Where the defendant is within the State, and the land or other property in contest is beyond its limits, although the proceeding is "*in rem,*" there is not a want of jurisdiction: to enforce a decree in a case of this kind, the proceedings may be "*in personam,*" as well as by injunction, to recover the possession of the thing disputed. *Ibid;* see also, *White vs. White*, 7 *G. & J.*, 218; *Stansbury vs. Fringer*, 11 *G. & J.*, 149; *Binney's Case*, 2 *Bland*, 99; *Buchanan vs. Lorman*, 3 *Gill*, 51, 81, 82.

Such being the general authority of Courts of Equity, over persons and things residing or situate within the limits of the State, it necessarily follows, that as to that species of property, which has no "habitat," but follows the person, such as debts or *choses in action*, jurisdiction as to the person, must include jurisdiction as to the thing.

Thus the *chose in action* following the person of the creditor, the law of his domicil, regulates the disposition of the debt due him.

If he dies, his will executed according to the laws of the State in which he died, determines the disposition of the debt due him; or if intestate, the distribution follows the law of succession prevailing in the State of his domicil.

His assignment, (if living,) carries the debt to the assignee, unless the same has been previously garnisheed.

So in case of insolvency, the trustee of the creditor becomes by operation of law the assignee of the debt, and as between citizens of the same State, the creditors of the insolvent are concluded by the discharge of the insolvent Court.

The almost universal exercise of this power, by the several States, since the adoption of the Federal Constitution, in the form of Exemption Laws, and other similar legislation, sanctions by common consent its harmony with the Constitution of the United States.

The 44th section of the Third Article of the Constitution of Maryland, (1867,) declares "Laws shall be passed by the General Assembly, to protect from execution a reasonable amount of the property of the debtor, not exceeding in value the sum of five hundred dollars."

In the Code of "Public General Laws," Art. 10, sec. 36, Title Attachments, it was enacted that no attachment should lie against the wages or hire of any laborer or employé, not actually due at the time of the attachment, "and the sum of ten dollars of such wages or salary, should be exempt from attachment on warrant or on judgment.

The Act of 1874, ch. 45, is but an assertion of the same power, in promotion of the same policy. By this latter. Act, the 36th sec. of Art. 10 of the Code, is repealed, and in its place, is the amendment extending the exemption to one hundred dollars.

Keyser *vs.* Rice.

From considerations of public convenience, the Courts have long since decided, that attachments would not lie against the salaries of public or municipal officers, and the same principles enlarged, have determined the Legislature to exempt the wages of employés of private persons and corporations.

The power of the State to compel its citizens to respect its laws, even beyond its own territorial limits, is supported we think by a great preponderance of precedent and authority.

The Supreme Judicial Court of Massachusetts, in the case of *Dehon, and others vs. Foster, and others,* in a very learned and lucid opinion by BIGELOW, C. J., considered this subject in all its bearings and declared the doctrine to be clear and indisputable, that a Court of Chancery, upon a proper case being made, had authority to restrain persons within its jurisdiction from prosecuting suits either in Courts of this State or *of other States* or foreign countries.

This jurisdiction it affirmed was not founded upon any right to interfere with or control the proceedings of other tribunals in other States, but on the clear authority vested in Courts of equity over persons within their jurisdiction and amenable to process to restrain them from doing acts which will work wrong and injury to others, and are contrary to equity and good conscience.

In that case, certain creditors of an insolvent firm in Boston, being citizens of Massachusetts, and having reason to believe that proceedings were about to be instituted against the firm, to avoid the operation of the insolvent laws, caused a debt due the insolvents in Philadelphia to be attached.

These proceedings were held to be against equity and good conscience and the attaching creditors were held liable to be restrained by injunction.

The exercise of this jurisdiction was said to be sanctioned by precedents in England. In the case of *McIntosh vs.*

*Ogelvie,* 4 *T. R.,* 193, and 3 *Swanst.,* 365 *n,* this precise point was adjudicated. In that case the plaintiff was assignee of the bankrupt; the defendant, a creditor, who before the bankruptcy went into Scotland and made arrestments of debts due the bankrupt there. Lord HARDWICKE in giving judgment, said it was like a foreign attachment, by which this Court will not suffer a creditor to gain a priority.

The jurisdiction was exercised, and injunction issued in that case on the ground that it was against equity, for a creditor to evade the laws of his own country and thereby obtain a preference to the injury of other creditors. .

In the late case of *Snook vs. Snelzer,* the Supreme Court of Ohio enforced these principles, by enjoining a creditor, a citizen of Ohio, from proceeding in an action in Western Virginia to subject the earnings of an employé of the Baltimore & Ohio R. R. Co., also a citizen of Ohio, to attachment against said corporation, contrary to the exemption laws of Ohio. The Court referred to *Engel vs. Schemmen,* 40 *Ga.,* 206; *Dehon vs. Foster,* 4 *Allen,* 545; *Vail vs. Knapp,* 49 *Barbour,* 299; as decisive of the question.

The cases cited and relied on by the appellee do not conflict with the authorities maintaining the power of the State to compel its citizens to observe the laws of the State wherein they reside. ·

The case of *Ward vs. The State,* 12 *Wallace,* 418, decides that a State cannot enact laws imposing heavier taxes or licenses upon non-resident traders than on resident traders.

In reaching this conclusion, the Supreme Court decided such laws violated Art. 1, sec. 8, of the Constitution of the U. S., declaring " Congress shall have power to regulate commerce among the several States," and Art. 4, sec. 2, " the citizens of each State shall be entitled to all privileges and immunities of the several States."

Referring to the last clause of the Constitution, the Judge, whilst declining to define the words "privileges and immunities," said, beyond doubt they among rights included the right, "to maintain actions in the Courts of the State, and to be exempt from higher taxes or excises than are imposed by the State on its own citizens."

It is not intimated any where that this general guaranty of privileges and immunities to non-residents, designed as a protection against discrimination in favor of residents, is to operate as a limitation upon the inherent authority of the respective States over their own citizens.

The questions are entirely distinct.

The case of *Morgan vs. Neville*, 74 *Pa.*, 53, is not we think a decision upon the point in question.

In that case, judgment of condemnation had been obtained in this State, against the defendant as garnishee of Neville, by one Shannon, on an attachment issued by a justice of the peace of Alleghany County and served on Morgan, in Maryland, and judgment entered *by default*, and afterwards *satisfied* by Morgan.

The proceedings in Maryland were final and concluded, not *in fieri*.

All the parties were citizens of Pennsylvania. Neville then instituted suit against Morgan, who pleaded the judgment on the attachment and satisfaction thereof in bar.

The Supreme Court of Pennsylvania, assuming the proceeding in attachment was *bona fide*, and not intended to evade the Pennsylvania statute, held the judgment and payment were good plea in bar.

In the course of their opinion, the learned Judge who delivered the opinion referred to the 2nd section of the 4th Article of the Constitution, as giving the attaching creditor the right to institute proceedings in Maryland, but he never touched the question, whether, if the case of attachment had been pending, the Court of Chancery could not have

restrained a citizen of Pennsylvania from violating a law of the State of his domicil, protecting the wages of its citizens.

The general doctrine of the personal rights of a non-resident in the Courts of the State in which he was abiding were asserted. The idea of evading the law of the State of which he was a citizen was negatived. We think the intention to evade is necessarily presumed, when the act is persisted in after knowledge, and still *inchoate*, against the protestation of the complainant and the process of the Court.

Rational creatures must be presumed to intend the necessary and inevitable consequences of their deliberate acts. For these reasons, we dissent from the conclusion of the learned Judge below, and reverse the order appealed from and remand the cause, that an injunction may be granted.

*Order reversed, and*
*cause remanded.*

(Decided June 19th, 1877.)