Filed Oct. 14, 1891.

---

No. 353.

## KESTLER *v.* KERN.

EXEMPTION.—*Oppressive Garnishment.—Sending Claim Out of State.—Evasion of Exemption Laws.—Damages.*—Plaintiff and defendant were both residents of Indiana. The plaintiff was in the employment of a railroad company which operated a line of railroad extending from the State of Indiana to and within the State of Kentucky. The plaintiff was indebted to the defendant, and the defendant, for the purpose of evading the exemption laws of Indiana, made an assignment of his claim, without consideration, to a resident of Kentucky, who collected it by attaching the earnings of the plaintiff.

*Held,* that the defendant is liable in damages to the plaintiff. REINHARD, J., dissents.

From the Clark Circuit Court.

*L. A. Douglas,* for appellant.

*G. H. Voight,* for appellee.

CRUMPACKER, J.—Kestler sued Kern in the Clark Circuit Court, alleging in his complaint, in substance, that during the year 1889 he was a resident householder in Clark county, and was entitled to the benefit of the exemption laws of the State; that he owned no real estate, and his entire personal estate, including rights, credits and choses in action, was

worth less than two hundred dollars; that he was a laborer, in the service of the Pennsylvania Company, a corporation which was operating a railroad running through said Clark county and extending into and across Jefferson county, in the State of Kentucky; that the defendant was a resident of said Clark county, and was engaged in the retail grocery business therein, and plaintiff was indebted to him on account to the amount of twenty dollars for groceries purchased of him, and that there were wages due plaintiff from said railroad company for his labor; that said company had offices and agents in said Clark county, and both parties to the action and said company were within the jurisdiction and subject to the process of the courts of said county, but on the 27th day of May, 1889, the defendant, well knowing the premises, wrongfully and unlawfully, and for the purpose of depriving plaintiff of his right to claim exemption under the laws of the State of Indiana, assigned and transferred his said claim against plaintiff to one Henry C. Heft, a resident of Jefferson county, Kentucky, without any consideration whatever, but for the purpose of having said claim sued in the State of Kentucky, and plaintiff's earnings due him from the railroad company as aforesaid attached for the payment of defendant's said account, and in pursuance thereof said Heft commenced a suit before a justice of the peace in Jefferson county, Kentucky, and attached the wages due plaintiff from said company, and took such additional steps in such proceeding that plaintiff's said wages were duly ordered by said justice to be paid in satisfaction of said claim and costs, which was thereafter done; that said Heft prosecuted such proceedings for and on behalf of the defendant, who obtained the proceeds thereof, and plaintiff was thereby deprived of the right of claiming said earnings as exempt from attachment for the payment of said debt, and by reason of such attachment said company discharged plaintiff from its service, all to his damage in the sum of five hundred dollars.

A demurrer was filed to the complaint and sustained, and judgment entered against plaintiff, from which he appeals, and assigns as error the ruling of the court upon the demurrer.

The complaint in the case of *Uppinghouse* v. *Mundel,* 103 Ind. 238, was similar to that in the case at bar, and was held bad on demurrer. That case is relied upon in support of the decision of the trial court.

In every civil action there are two essential ingredients ; one is the injury or wrong inflicted, and the other is the law's measure of recompense. The absence of either is fatal to the action. *City of North Vernon* v. *Voegler,* 103 Ind. 314.

Where one does, in a proper manner, that which he has the lawful right to do, and damages result to another as a consequence, the law recognizes no liability, because there is no breach of legal duty, and consequently no legal injury. It is said to be *damnum absque injuria.* If, upon the other hand, one does an unlawful act, injurious in its consequences to every member of society in common, while one may suffer in his sense of security and in the enjoyment of the benefits of government, there is no damage, in contemplation of law, which would support a civil action ; in legal phraseology, it is *injuria sine damno.*

In the case before us the first question to be settled in logical order is, do the facts set out in the complaint constitute a legal injury ?

Under the common law, if a debtor had two cloaks one could be seized and sold for his debt without regard to his necessities, or the necessities of those dependent upon him for support. When this rigid and uncharitable rule began to give way to a nobler sentiment of benevolence, in the form of constitutional and statutory provisions designed to protect the debtor, and those relying upon him for maintenance from absolute want and destitution, it was regarded as an epoch in our jurisprudence, marking the entrance of humanity into a higher civilization, and now every nation on

the globe which lays any claims to a respectable order of civilization has provisions more or less adequate for the relief of the debtor and his family. The right to a reasonable amount of property exempt from seizure or sale for the payment of debt is vouchsafed by the Constitution of this State, and the laws which have been enacted to secure this right to the debtor have been, and are, it may be said, to the credit of our institutions, especially favored in the administration of justice. They have been characterized by the courts as " humane," " beneficent," " benevolent " and " benign," and they have uniformly been interpreted with great liberality in favor of the debtor.

Section 703, R. S. 1881, provides that an amount of property, not exceeding in value six hundred dollars, shall be exempt from sale upon execution, or other final process, against a householder, upon a demand growing out of, or founded upon, contract. While the exemption provided in this section is absolute in terms, it is made by other provisions to depend upon the contingency that the debtor will claim the privilege, at the time and in the manner laid down, or he will be deemed to have waived it; and it is regarded as a personal right, to be asserted, rather than an absolute right created by force of the provisions of the statute.

The law presumes, however, that the debtor will avail himself of the privilege, in the absence of evidence of a contrary intention. *State, ex rel.,* v. *Harper,* 120 Ind. 23.

Section 959 provides that the earnings of an employee of any person, or corporation, shall not be subject to garnishment for his debt so long as he shall remain in the service of such person, or corporation, not exceeding one month's wages. This provision seems to be absolute, and is not dependent upon any act of the debtor; yet, if earnings so made exempt should be attached in the courts in this State, and the beneficiary of the law should fail to assert his right to the exemption, it would amount to a waiver.

It is made a crime, punishable by fine, for any person

to send, or cause to be sent, any claim against a citizen of this State into another State, or to assign or transfer such claim for the purpose of being collected in the courts of another State, with the purpose and intention of depriving. such debtor citizen of his rights under the exemption laws of this State, where the parties and subject-matter are within the jurisdiction, and could be reached by the process of the courts in this State. Sections 2162 and 2163, R. S. 1881; *State* v. *Dittmar*, 120 Ind. 54.

In the case under consideration the complaint discloses facts, which, if true, would subject the appellee to a criminal liability under the provisions of section 2162, *supra*. And while it is true that statutes of that character are designed primarily to promote the public welfare, and infractions thereof should, ordinarily, be redressed by public prosecutions, yet the almost unbroken current of authority sanctions the right in an individual who has been specially damaged by an act which is in violation of a criminal statute, to maintain an action for his damages, notwithstanding the same act may subject the wrong-doer to a penalty in a public prosecution.

In every violation of the penal laws enacted for the protection of society, each member of the body politic suffers an injury, in theory at least, but such injuries as are common to all the citizens can not be made the basis of a private suit; but where one is injured above that inflicted upon him as a member of the commonwealth the rule is different. *Powell* v. *Bunger*, 91 Ind. 64.

Such special injury, however, must ordinarily arise from an invasion of some civil right existing independent of the criminal law or expressly conferred thereby.

Judge Cooley, in his work on Torts, p. 7, says: "When the act or neglect which constitutes a public wrong is specially and peculiarly injurious to an individual, and obstructs him in the enjoyment of some right which the law has undertaken to assure, the offender may be subject to a double lia-

bility ; he may be punished by the State and he may also be compelled to remunerate the individual." See, same work, p. 102 (2d ed.) ; 1 Sutherland Dam., pp. 3 to 6.

It was held in *Wilson* v. *Joseph*, 107 Ind. 490, that where an act is made punishable by statute it is as effectually prohibited as if the act were legislated against in positive and direct prohibitive terms.

It was said by the court in *New* v. *Walker*, 108 Ind. 365 : " It is an elementary rule that what the law prohibits, under a penalty, is illegal, and it can not, therefore, be the foundation of a right as between the immediate parties."

In the case before us the appellant was a resident householder of the State, and was entitled to the benefit of our laws exempting property from the payment of debt, under certain circumstances. By an unlawful act of the appellee, which was done with that end in view, the appellant's right to exemption was defeated, and that which the law declares he should enjoy with impunity was taken from him. His rights were violated and his loss was special and substantial.

The next question for determination is, has the appellant suffered damages which the law will recognize and remunerate ?

It is a familiar maxim of the law that for every wrong there is a remedy.

In *Ashby* v. *White*, 1 Salk. 19, Lord HOLT said : " If a statute gives a right, the common law will give a remedy to maintain that right."

In Cooley Torts, p. 20, it is said : " It is a legal paradox to say that one has a legal right to something, and yet that to deprive him of it is not a legal wrong. When the law thus declines to interfere between the claimant and his disturber, and stands, as it were, neutral between them, it is manifest that, in respect to the matter involved, no claim to legal rights can be advanced."

It can not be said that the unlawful act which deprived

appellant of his right to exemption resulted in no damage in contemplation of law, because the funds were applied in payment of his just debt.   If this were the law in every instance where an officer refused to set apart property claimed by a debtor as exempt from sale, the debtor would be remediless providing the proceeds of the property were applied upon the debt.   This interpretation of the law would render practically nugatory every provision intended for the relief of the debtor.

But it has been decided and adhered to with marked steadfastness that if an officer refuses to surrender property exempt from sale, but proceeds to dispose of it, the debtor may recover the property in the hands of an innocent purchaser, or he may sue the officer and the judgment plaintiff, or either of them, for trespass, and recover the value of the property notwithstanding he may have had credit for it upon his debt.   *Huseman* v. *Sims*, 104 Ind. 317; *Conwell* v. *Conwell*, 100 Ind. 437; *Douch* v. *Rahner*, 61 Ind. 64; *Graham* v. *Crockett*, 18 Ind. 119; *Haswell* v. *Parsons*, 15 Cal. 266; *Below* v. *Robbins*, 76 Wis. 600; *State* v. *Haughton*, 30 Mo. App. 476; *Alsup* v. *Jordan*, 69 Tex. 300; Thompson Homesteads and Ex., section 877; Freeman Ex., section 215.

In the State of California the exemption laws require the debtor to prepare and tender a schedule to the officer holding the writ, and designate the property claimed exempt from sale, very similar to the requirement of the law in this State.   In the case of *Haswell* v. *Parsons, supra,* it was held by the court that where an execution had been issued, and property set apart to the debtor, upon his application under the exemption laws, and the execution was returned *nulla bona,* and an *alias* execution issued upon the same judgment which the sheriff levied upon the property before set apart as exempt, and sold it, the defendant being away from home and unable, on account of sickness, to again apply for exemption, the sheriff was liable to the debtor for the value of the property sold.   Under the circumstances the debtor was

Kestler v. Kern.

held not to have waived his rights to the benefit of the exemption law.

It is now firmly settled in this country that a debtor may enjoin his creditor from sending a claim into another jurisdiction for the purpose of evading the exemption laws of the State where they reside, and of collecting the claim from property exempted by the laws of the home State, whether it is prohibited by the penal laws or not. *Cole* v. *Cunningham*, 133 U. S. 107; *Wilson* v. *Joseph*, *supra*; *Teager* v. *Landsley*, 69 Iowa, 725; *Mumper* v. *Wilson*, 72 Iowa, 163; *Keyser* v. *Rice*, 47 Md. 203; *Snook* v. *Snetzer*, 25 Ohio St. 516; *Engel* v. *Scheuerman*, 40 Ga. 206; *Zimmerman* v. *Franke*, 34 Kan. 650; *Dehon* v. *Foster*, 7 Allen, 57.

In *Wilson* v. *Joseph*, ELLIOTT, J., speaking for the court, said: "The object of our exemption laws, as this court has many times declared, is to secure to a resident householder the reasonable comforts of life for himself and his family. This is the doctrine asserted by our organic law and by our statutes. It was to give full and just effect to this humane and benign principle of our law, that the Legislature enacted a statute making it an offence for any person to send a claim against a debtor out of the State for collection, in order to evade our exemption laws. R. S. 1881, section 2162. The enactment of which we are speaking is prohibitory in its character, for it is one of the rudimentary principles of the law that a statute making an act a criminal offence prohibits its performance as effectually as if the prohibition were expressed in direct terms. There can, therefore, be no doubt that our statutory law prohibits a creditor from evading our exemption laws by sending his claim to a foreign jurisdiction for collection.

"The attempt to take from a workman the wages earned by him, by sending the claim to a jurisdiction where our exemption laws will not avail him, is one that the courts will not tolerate. They will, on the other hand, lay the "strong arm of chancery" upon persons within their jurisdiction, and

prevent them from taking away the wages which our Constitution and our statute wisely secure to him for the support of his family."

It would be a lasting reproach to our jurisprudence, armed as it is in its admirable combination, with all the powers and attributes of both law and equity, to hold that while a creditor may be enjoined from sending a claim into another jurisdiction for the purpose of evading our exemption laws, yet if he should do so successfully, without the knowledge of the debtor, or if the debtor, on account of his poverty, be unable to furnish the necessary undertaking for a restraining order, the law will afford him no redress. In many instances creditors could assign or transfer claims against our citizens to citizens of other States for the purpose of facilitating their collection before a restraining order could be obtained, and no order of injunction, after such assignment, or transfer, could interfere with the non-resident assignee, and prevent him from prosecuting proceedings in the tribunals of his own State. The "strong arm of chancery" would afford very inadequate protection under such circumstances.

But the extraordinary remedy of injunction never assumes to prevent an act which, if done, would result in no injury, in contemplation of the law. It does not undertake to prohibit the commission of an immoral, or illegal act, unless it is necessary to protect some recognizable substantial right, either legal or equitable.

It is said, in High Injunctions, section 20: "The subject-matter of equity jurisprudence being the protection of private property and of civil rights, courts of equity will not interfere for the punishment or prevention of merely criminal or immoral acts. Equity has no jurisdiction to restrain the commission of crimes, or to enforce moral obligations, and the performance of moral duties, nor will it interfere for the prevention of an illegal act merely because it is illegal; and, in the absence of any injury to property rights, it will not lend its aid by injunction to restrain the viola-

tion of public or penal statutes, or the commission of immoral and illegal acts." See, also, 10 Am. and Eng. Encyc. of Law, p. 780.

There can be no question, upon principle or authority, that a violation of the statute under consideration is such an unlawful act as will give rise to a right of action in the debtor who has been deprived of his statutory privilege thereby. Such right of action may be in the nature of a suit *ex delicto* for damages resulting from the unlawful act of another, or it may be *ex contractu*, for money had and received, upon the principle that one who by his unlawful act obtains property which belongs to another, will, in law, be deemed to hold it for the use of him to whom it of right belongs.

Exemption laws are remedial in their nature, and do not import vested rights or privileges into contracts. Consequently, as a rule, they can have no extra-territorial force. Where the laws of two jurisdictions are substantially the same respecting rights of exemption, however, in a suit between two citizens of one of such States, in the courts of the other, the exemption laws of the State of their residence will be given effect, upon the doctrine of interstate comity. *Terre Haute, etc., R. R. Co.* v. *Baker*, 122 Ind. 433; *Drake* v. *Lake Shore, etc., R. W. Co.*, 69 Mich. 168; *Pierce* v. *Chicago, etc., R. W. Co.*, 36 Wis. 283; *Missouri, etc., R. W. Co.* v. *Maltby*, 34 Kan. 125; *Wright* v. *Chicago, etc., R. R. Co.*, 19 Neb. 175.

While the Federal Constitution requires that full faith and credit shall be given the judgments and proceedings of courts of other States, this requirement does not prevent a State from preserving the proper legal relations between its own citizens, and compelling one to do to another that which its laws require, even if he has acquired an advantage by the sanction of a tribunal in another jurisdiction.

In the case of *Phillips* v. *Hunter*, 2 H. Bla. 403, this doctrine was announced with much vigor and clearness. In that case the plaintiff was the assignee of one who had been ad-

judged a bankrupt. The defendants were creditors, residing in England, and they sent their claims to this country for collection, and attached debts due the bankrupt in Pennsylvania, and secured the proceeds thereof. The suit was to recover from them the proceeds of such collection, and the court held that, as the parties were all citizens of that country, it had the power to enforce an observance of the laws as between them, and that the defendants should account to the assignee for the proceeds of the foreign collections. Among other things, the court said: "In an action for money had and received, the receipt shall be always deemed to enure to the use of him who hath the right, even though it be taken under an adverse title."

In *Keyser* v. *Rice, supra,* the court said : "The power of the State to compel its citizens to respect its laws, even beyond its own territorial limits, is supported, we think, by a great preponderance of precedent and authority."

The case of *Stark* v. *Bare,* 39 Kan. 100, is precisely like the case at bar. The parties to the action were both residents of Kansas, and the plaintiff was in the employment of a railroad company, which operated a line of railroad extending from within' the State of Kansas to and within the State of Missouri. The laws of Kansas exempted the wages and personal earnings of its citizens for a period not exceeding sixty days, from attachment or garnishment for the payment of debts. The defendant held a claim against the plaintiff, which he sent into the State of Missouri for collection for the purpose of evading the exemption laws of Kansas, and collected his claim by attaching the earnings of the plaintiff. The suit was to recover damages, including the amount of wages attached, and the court held the defendant liable, saying: "In the present case, both parties are citizens of the State (Kansas), and subject to its laws. According to the allegations of the petition, Stark brought his action in Missouri, at a place far distant from the residence of Bare, for the express purpose of evading the Kansas laws, and wrong-

fully appropriating the earnings of Bare, to whic'ı he was not entitled. We think it was a wrong which may not only be restrained by injunction, but that the citizen who proceeds and inflicts the wrong is liable to the debtor to the extent of the injury sustained."

In the case of *Teager* v. *Landsley, supra,* the court held that a creditor, who, in violation of an order of court restraining him therefrom, collected his debt by seizure of property exempt from execution in the State of Iowa, by attachment proceedings in another State, was liable to the debtor in damages for the value of the property so appropriated.

In *Albrecht* v. *Treitschke,* 17 Neb. 205, the facts were as follows: Albrecht owed Treitschke upon account, which the latter put in judgment. The former was in the employment of the Omaha Smelting and Refining Company, and wages were due him from such employer, which were exempt from attachment or seizure for the payment of debts. Treitschke, without the knowledge of Albrecht, caused a garnishee process to issue against the smelting company, and by virtue thereof obtained an order against the latter for the payment of the wages due Albrecht upon the judgment against him. Albrecht then sued Treitschke for the recovery of the wages obtained by him by the garnishment, and the court held that he was entitled to recover, declaring that "It is well settled that if exempt property is seized and applied to the payment of a judgment, the owner may have his action against the wrong-doer, unless such exemption is waived by some act or omission of the debtor."

In the case of *Schaller* v. *Kurtz,* 25 Neb. 655, personal earnings had been appropriated by a creditor in payment of his demand, by proceedings in garnishment, in violation of the debtor's rights under the exemption laws, and in the decision of the question the court said: "Where, by garnishee process, a creditor obtained the money of his debtor which

was exempt from execution, a cause of action thereby arose in favor of the debtor against the creditor."

From our examination of the questions involved in the case before us, we are firmly convinced that in harmony with the principles of justice and the greater weight of authority, the appellee was guilty of an actionable wrong in assigning and transferring his claim against the appellant for the purpose of evading the exemption laws of this State, and that substantial legal damages resulted from such wrongful act.

It would be a sad commentary upon the efficiency of our laws to be compelled to confess that a right which has been esteemed so highly and guarded so zealously by the courts could be trampled upon, and the benefits of the legislation misappropriated, in violation of the law, and yet the injured party be without remedy.

In the case of *Wilson* v. *Joseph, supra,* the principles underlying a right of action in such cases are declared with much emphasis and ability, and such right is ably supported by precedent, and has the sanction of reason and justice.

In the case of *Uppinghouse* v. *Mundel, supra,* the question seems to have been treated by the court as depending wholly upon the effect of the criminal statute forbidding the transfer of claims to other States, and in that view the conclusion of the court is, perhaps, not subject to criticism. If a right did not otherwise exist, the violation of a penal law prohibiting the transfer of claims to be collected in a foreign jurisdiction would create no right in the debtor. But where a right exists, penal laws enacted for the protection of such right, though designed primarily to promote the public welfare, may make an act unlawful, and thus furnish the basis of a civil remedy, which would not otherwise exist. This phase of the question does not seem to have been presented to the court in *Uppinghouse* v. *Mundel, supra,* at least it is not discussed in the opinion.

Many of the authorities cited above affirm the principle that a debtor may be restrained from, or compelled to pay

damages for transferring a claim into a foreign State for the purpose of evading the exemption laws, even where such transfer is not prohibited under a penalty or otherwise by express statutory provisions.

Our conclusion leads to the reversal of the judgment.

We decide nothing relative to appellant's right to recover special damages on account of his being discharged by his employer as a result of the attachment proceedings. This question is not discussed in the briefs of counsel.

The judgment is reversed, with instructions to overrule the demurrer.

Filed Oct. 15, 1891.

## DISSENTING OPINION.

REINHARD, J.—The decision of the court in this cause is confessedly in conflict with *Uppinghouse* v. *Mundel,* 103 Ind. 238.

The case of *Wilson* v. *Joseph,* 107 Ind. 490, is relied upon as enunciating a different principle, and one which it is claimed is in harmony with the conclusions reached in this case.

I am fully persuaded that the case last cited presents entirely different questions, and such as have reference only to the equity powers of the court to prevent by injunction the thing for which it is sought here to recover damages, and this distinction is expressly pointed out by the learned judge who delivered the opinion in that case. This leaves us, then, in a position as overruling the Supreme Court upon a question fully passed upon by that tribunal.

Section 25 of the act creating an Appellate Court expressly prohibits this court from reversing or modifying, either directly or by implication, any decision of the Supreme Court of this State.

Aside from this statute, the fact of having in the same State two courts of last resort pursuing lines of decisions upon given legal questions, leading in exactly opposite di-

rections, is so at variance with my understanding of public policy that I can not bring myself to assent to what seems to me but the first decisive step toward that end.

These are my reasons for respectfully dissenting from the decision of the court in this case.

Filed Oct. 15, 1891.