### RIDGWAY v. MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS.

No. 14857.

Court of Civil Appeals of Texas. Fort Worth.

July 11, 1947.

Rehearing Denied Sept. 12, 1947.

W. P. McLean, of Fort Worth, and Chester D. Johnson, of Minneapolis, Minn., for appellant.

G. H. Penland and M. E. Clinton, both of Dallas, and Barwise & Wallace and Fred ·L. Wallace, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

On March 11, 1946, Ralph P. Ridgway, a resident of Tarrant County, Texas, was injured in said county while engaged in the performance of his duties as an employee of Missouri-Kansas-Texas Railroad Company of Texas, a Texas corporation. On January 24, 1947, Ridgway filed suit in the District Court of the United States for the Southern District of New York ·to recover $300,000 damages alleged to have been sustained by reason of said injuries. The suit, as well as the claim of venue in the State of New York, was based on the theory that Ridgway's cause of action was governed by the provisions of the Employers' Liability Act and Safety Appliance Acts of the United States, 45 U.S.C.A. §§ 1 et seq., 51 et seq., and that Missouri-Kansas-Texas Railroad Company of Texas, to whom we shall hereafter refer as the Railroad Company, was doing business in the State of New York within the meaning of Section 6 of the Federal Employers' Liability Act, 45 U.S.C.A. § 56. Such section provides:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action."

On March 4, 1947, the Railroad Company filed a suit in the 96th District Court of Tarrant County, Texas, for the purpose of enjoining Ridgway from prosecuting the suit in the federal court in New York. This appeal is from an order granting a temporary injunction enjoining and restraining Ridgway, pending final disposition of this cause, from prosecuting, participating in, or taking any action in connection with the suit filed in New York. In the order granting the injunction the trial court expressly found that the Railroad Company was not doing business, within the purview of Section 6 of said Federal Employers' Liability Act, in the State of New York or in the district of said federal court in that state at the time the action was commenced therein or at the time of attempted service of process, or at any other time between the commencement of said action and the hearing in the present cause; that there had been no valid service of process in the federal court suit; that said federal court had no jurisdiction of the Railroad Company; that it would be inequitable to permit Ridgway to prosecute said suit; that the prosecution of said suit would deprive the Railroad Company of its property without due process and in violation of the Fifth Amendment to the Constitution of the United States; that the prosecution of said suit would result in an undue and unreasonable burden upon interstate commerce resulting in injury to the national transportation system of which the Railroad Company is a part; and that the issuance of the temporary injunction was necessary to prevent immediate and irreparable damage to the Railroad Company.

■ It is a general rule that the granting or denial of a temporary injunction is largely discretionary with the court, if the injunction tends only to preserve the status quo or to protect the court's jurisdiction, and that the court's action in such respect will be disturbed on appeal only when an abuse of discretion clearly appears. 24 Tex. Jur., p. 121. The parties to this appeal, however, appear to make no point of the fact that the injunction appealed from is a temporary rather than a permanent injunction. In view of this attitude of the parties, and in view of the fact that the case appears to have been fully developed, from a standpoint of proof, we shall apply the general principles of law which would be applicable if the court had issued a permanent injunction.

■ The question first considered in the briefs of the parties is whether the Railroad Company was doing business in New York. We uphold the finding of the trial court that it was not. Whatever dispute there is as to the facts, resulting from conflicts in the evidence, must be resolved in favor of the Railroad Company. So treating the evidence, it appears only that the Railroad Company maintained in New York certain agents for the solicitation of business. This did not amount to doing business in that State, within the meaning of the Act. Green v. Chicago, B. & Q. Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Cancelmo v. Seaboard Air Line Ry., 56 App.D.C. 225, 12 F.2d 166; Trizna v. New York, C. & St. L. Ry. Co., 57 F.Supp. 484; Murray v. Great Northern Ry. Co., D.C., 67 F.Supp. 944. We have examined the decisions cited by Ridgway in support of his contention that the Railroad Company was doing business in New York, but find that each of the cited cases involved a situation where the corporation did more than merely solicit business in the state where it was sued.

■ We do not see that it is material whether or not there had been, prior to the time of the hearing in the court below, a valid service of process on the Railroad Company in New York.

Much has been written concerning the right of a court to enjoin a person within its jurisdiction from prosecuting a suit in a foreign state or country. The opinions in the following cases, both majority and dissenting, discuss at length the general rules, and the applicability of them to suits brought under the Federal Employers' Liability Acts. Baltimore & Ohio Ry. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222; Miles v. Illinois Central Ry. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104; Southern Ry. Co. v. Cochran, 56 F.2d 1019; Chesapeake & O. Ry. Co. v. Vigor, 6 Cir., 90 F.2d 7, certiorari denied 302 U.S. 705, 58 S.Ct. 25, 82 L.Ed. 545; Rader v. Baltimore & O. Ry. Co., 7 Cir., 108 F.2d 980, certiorari denied 309 U.S. 682, 60 S.Ct. 722, 84 L.Ed. 1026. For citations of other cases, see the annotations in 57 A.L.R. 77; 85 A.L.R. 1351; 113 A.L.R. 1444; 115 A.L.R. 237; 136 A.L.R. 1232; 146 A.L.R. 1118; and 86 L.Ed. 39. See also Union Pac. Ry. Co. v. Utterback, 173 Or. 572, 146 P.2d 76, 769, rehearing denied 173 Or. 572, 146 P.2d 769, certiorari denied 323 U.S. 711, 65 S.Ct. 36, 89 L.Ed. 572; Leet v. Union Pac. R. Co., Cal.App., 144 P.2d 64, subsequent opinion 25 Cal.2d 605, 155 P.2d 42, 158 A.L.R. 1008, certiorari denied 325 U.S. 866, 65 S.Ct. 1403, 89 L.Ed. 1986, both of which cases cite and follow the Kepner and Miles cases, supra.

■■ Although we have studied the declarations in a number of decisions of various state courts, the rules as declared by the federal courts are controlling on us. Baltimore & O. Ry. Co. v. Kepner, supra. From our study of the decisions of the federal courts, we think that it is now settled that a state court may not enjoin the prosecution of a suit under the Federal Employers' Liability Act, either in a federal court or in another state court, on the ground that the suit is vexatious, or on the ground of inconvenience to the railroad company, or on the ground that the prosecution of the suit constitutes a burden on interstate commerce, where the railroad company is doing business where the suit is brought.

■ The Railroad Company here insists that the rules announced in the above cases do not cover the situation where the railroad company is not doing business in the foreign jurisdiction. In each of the cases above

cited, the court appears to have taken pains to point out that the railroad company was doing business within the jurisdiction of the foreign court. The Federal Employers' Liability Act provides that the suit may be brought where the railroad company is doing business, and the holding of the United States Supreme Court is that the privilege granted by the Act to the injured employee is not one that can be denied him on the ground that the prosecution of the suit at any place permitted by the Act would work an inconvenience to the railroad company or would burden interstate commerce. All the grounds relied on by the Railroad Company here, other than that of lack of jurisdiction of the New York court, are precluded by the decisions cited above. We then must decide this question: Was the trial court authorized to enjoin the prosecution of the New York suit when it was shown to the trial court that the Railroad Company was not doing business where it had been sued? We think that it was not.

In the first place, we do not believe that the Railroad Company proved that it would be an undue hardship on it, or a burden on interstate commerce, to present to the New York court a plea challenging the venue in such court. The case made by the Railroad Company's proof was that it would be a great hardship to defend the case on its merits, that it would cost the sum of $20,-000 to transport and maintain during the trial the witnesses necessary to present its defense on the merits, and that its railroad operations would be seriously impaired by the absence of employees of the Railroad Company from their jobs.

■ In the second place, it is a general rule of equity practice that injunctions will not issue where the complaining party has an adequate remedy at law. 28 Am.Jur., pages 238 and 386. If the Railroad Company is not doing business in New York, and if for that reason venue of the suit does not lie there, the Railroad Company has an adequate legal remedy in the form of a plea to the jurisdiction of the court. We will not, at this time, presume that the plea will not receive proper consideration, or that it will be improperly acted upon. Courts may and often do, in proper cases, decide that other courts which have rendered judgments did not have jurisdiction to do so, but such an issue is not usually tried in advance in a suit to enjoin the prosecution of an action in another court. Even if the Texas court has power, abstractly speaking, to enjoin a person within its jurisdiction from prosecuting a Federal Employers' Liability Act case in a federal court where the railroad company is not doing business, the Texas court should, ordinarily, restrain itself from undertaking to deprive the federal court, in advance of trial, of the right to pass upon the question of its own jurisdiction.

In Smith v. Ryan, 20 Tex. 661, 662, an injunction was sought in the district court against the prosecution of a forcible entry and detainer case in the justice court on the ground that the latter court did not have jurisdiction of the controversy. The Supreme Court declared.

"The want of jurisdiction would be as available a defense in that court as in any other; and if it failed, the appellant had his remedy by certiorari, through his tenant in possession."

Smith v. Ryan is cited and followed in Story v. Story, 142 Tex. 212, 176 S.W.2d 925, where it is declared that the extraordinary writ of injunction will not be granted where there is a plain and adequate remedy at law.

The decisions of the federal courts above cited, as we read them, compel a holding that the Railroad Company is not entitled in this proceeding to enjoin Ridgway from prosecuting the suit in New York.

The judgment of the trial court is reversed, and the temporary injunction is dissolved.

On Motion for Rehearing.

Rehearing denied.

HALL, Justice (dissenting).

In its motion for rehearing, appellee presents a strong argument in support of its contention that this court erred in dissolving the temporary injunction restraining the appellant from prosecuting, participating in, or taking any action in connection with the suit filed by him against said appellee in the District Court of the United States for the Southern District of New York after it was found by the trial court that appellee was not doing business within

the New York jurisdiction under the special exception to the general venue statute, to-wit: 45 U.S.C.A. § 56. Appellee also argues that this court further erred in holding that the Miles and Kepner cases, cited in the opinion, were controlling and operate as stare decisis upon the actions of this court.

The writer agrees with the contention of appellee and therefore dissents from the original opinion of this court for the following reasons:

The appellant in this cause filed a law suit in New York against appellee, claiming jurisdiction under the special exception as set out in section 6 of the Federal Employers' Liability Act, which is as follows:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action."

The trier of the facts found under the testimony that appellee was not doing business in New York and that the domicile of both appellant and appellee is in the State of Texas. Since the exception to the venue statute, relied upon by the appellant, is not applicable, then the equitable right of the appellee for an injunction, falls within the category of those cases coming under the general rule wherein an action brought in a sister state generally may be enjoined in order to prevent manifest wrong or injustice, where all parties are residents of another state.

The question then for this court to decide is, whether the facts and circumstances warrant the trial court, without abuse of discretion, in granting the temporary injunction.

Appellee pled in the sworn petition that suit was instituted by appellant in New York in order to subject appellee to great and unnecessary expense in the sum of some $25,000; for the purpose of vexatiously harassing and annoying appellee in order to force said appellee to pay large and unreasonable sums of money to appellant; that to prosecute said suit in New York would be an interference with and an undue bur-den upon interstate commerce; and that appellee has no adequate remedy in law.

The uncontradicted testimony shows that if the injunction were not granted, it would cost appellee to defend the suit in New York the sum of approximately $20,000 additional money; that it would be a burden on interstate commerce in that its railroad operations would be seriously impaired by the absence of many employees from important positions and the further burden of transporting them as witnesses on the 4,000 mile round trip.

The writer finds that the above proof is sufficient, under the law, to authorize the granting of a temporary writ of injunction. Even though it is conceded, without question, that appellant believed appellee to be doing business in the jurisdiction where he brought the suit, yet this fact alone is not sufficient to maintain the suit in said court. Since venue having failed, further prosecution of the same under the facts would be needless and would become burdensome to interstate commerce traffic and to the appellee; and no advantage having been shown by appellant in continuing the prosecution of the suit in New York, what reasons, then, should this court have in dissolving such injunction?

In this court's opinion, it is pointed out that a court from one state does not have the authority to decide the jurisdiction of a court in a sister state. That is sound law, but it is equally as sound, under the authorities, that the injunction granted restrains only the person within the jurisdiction of this state from continuing the particular conduct and action and is not, in any way, to be construed to control the actions of the court in New York. 21 C.J.S., Courts, § 554, page 858; 43 C.J.S., Injunctions, § 50, page 503. Keyser v. Rice, 47 Md. 203, 213. Moton v. Hull, 77 Tex. 80, 13 S.W. 849, 8 L.R.A. 722, by Supreme Court of Texas.

43 C.J.S., Injunctions, § 49, page 499, styled "Actions and Proceedings in Other States or Countries," sets out many cases wherein an injunction will be granted preventing a citizen of one state from bringing an action against a citizen of the same state in a court of a sister state. Some of the reasons are:

"* * * where it is made to appear that its prosecution will interfere unduly and inequitably with the progress of local litigation or with the establishment of rights properly justiciable in the local court, will subject complainant to fraud, gross wrong, or oppression, to irreparable injury, or to great hardship, inconvenience, or expense, such as in transporting witnesses and documentary evidence; that the action was instituted for the purpose of, or will result in, securing to plaintiff therein some unfair, unconscionable or inequitable advantage, arising either under the law or the facts; that it is unduly annoying, vexatious, and harassing or is contrary to equity and good conscience; or that the matters in controversy can be more fairly, impartially, and expeditiously adjusted and the ends of justice better attained in the jurisdiction where the parties then are than in the foreign court * * *." See also 32 C.J., page 115, § 137d.

An injunction will lie to prevent an irreparable injury. 43 C.J.S., Injunctions, § 37, page 470.

I also respectfully disagree with this court's opinion to the effect that appellee has an adequate remedy at law. I find no adequate remedy at law that will protect the appellee from the injury to be sustained without going to New York to see whether or not such law might be available to it. There is nothing in the record in this case to show that a plea to the jurisdiction may be available and/or that it has already been passed upon. All that this record shows is that the suit is pending in New York and the appellee will be forced to defend such suit in that court unless appellant is enjoined from prosecuting same. To force the appellee to go to New York for protection of the law would defeat the very purpose for which the injunction is granted; such action could not be called adequate. Even though there might be a hearing in New York on the jurisdictional question, yet it could be overruled and at the same moment, an announcement of the trial on its merits immediately ordered. There is no question in this lawsuit as to what the action of the court in New York will be, but the big question is whether or not the State of Texas, through its courts, will protect its citizens from defending lawsuits filed by its own subjects in sister states 2,000 miles away without showing of any assistance to be received by the person bringing the law suit. There is nothing under the law to keep the appellant from bringing this suit anywhere within the confines of that vast territory where this railroad is doing business and/or where the accident occurred. To uphold the opinion in this case would not only expand the provisions of section 6 of the Act, but it would also encourage litigants in Texas to bring their suits in far distant sister states and provinces which would in effect vitiate what little is left of Vernon's Ann.Civ.St. Article 1995 (Texas Venue Statute) and would entitle a wrong-doer, to-wit, a drunk driver, to bring suit 2,500 miles away from the scene of the accident in order to establish jurisdiction for the purpose of defeating justice.

The provisions of the Act are very liberal and there is no just reason shown why appellant cannot receive justice under it.

In the case of Nelson v. Lamm, Tex.Civ. App., 147 S.W. 664, 667, writ refused, the Texas court held "* * * The doctrine is well recognized that a court of equity having jurisdiction of the persons may command and require them to proceed no further with suits in another state or in a foreign country, (citing many cases). * * * Even though the property which is the subject-matter of the controversy be located in another country, the court will not be prevented from exercising jurisdiction where all the parties are amenable to its process. (Citing cases) * * * 'The jurisdiction of the English Court of Chancery to restrain persons within its territorial limits and under its jurisdiction from doing anything abroad, whether the thing forbidden be a conveyance or other act in pais, or the institution or the prosecution of an action in a foreign court, is well settled.' (Citing cases) * * *"

In the case of William Cameron & Co. v. Abbott, Tex.Civ.App., 258 S.W. 562, 563, the State court wrote as follows:

"There is no question as to the power of a court of equity to enjoin a party subject to its jurisdiction from prosecuting in a foreign jurisdiction a suit against the peti-

tioner in the suit for injunction. The power, however, is cautiously exercised."

43 C.J.S., Injunctions, § 37, page 468, is quoted as follows:

"Equity will interfere to enjoin an action or proceeding at law where equity affords a plainer and more adequate and complete remedy for the wrong complained of than can be afforded in the law action or proceeding. This power of equity, however, is to be sparingly exercised, and only when other remedies are inadequate and the equities invoking it are apparent and strong, and when by compelling issues of sufficient fact or law it is required to do so to protect the parties' rights."

And on page 464, § 30, of the same text:

"If it is shown that the refusal of the injunction would cause complainant great inconvenience and injury, and that the granting thereof would result in but little injury or inconvenience to defendant, the court will ordinarily grant the injunction although complainant's right may be doubtful or not clearly established * * *."

The same text, on page 405, § 1, describes an injunction as " * * * a writ framed according to the circumstances of the case commanding an act which the court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience. It is an equitable remedy, and has been held the principal and the most important process issued by courts of equity. The function or purpose of an injunction is to restrain action or interference of some kind, to furnish preventive relief against irreparable mischief or injury, or to preserve the status quo; it is protection for the future and not punishment for past transactions * * *."

The Supreme Court of Texas, in the case of Moton v. Hull, as far back as 77 Tex. 80, 13 S.W. 849, 8 L.R.A. 722, held as follows: " * * * This power or authority is exercised upon the ground of the right of the state to compel its citizens to respect its laws beyond its territorial jurisdiction. 'Although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons and things

within their own territorial limits. When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity in the latter may act in personam upon those parties, and direct them by injunction to proceed no further in such suit.' Such is the principle laid down by Mr. Justice Story. Story, Eq.Jur. #899."

The opinion of the writer is in accord with the holding in the case of Miller v. Gittings, 85 Md. 601, 37 A. 372, 375, 37 L.R.A. 654, 60 Am.St.Rep. 352, as follows: " * * * The transactions in this case all occurred in the city of Baltimore. The parties to this controversy are all citizens and residents of that city. The evidence would naturally be there, and readily obtainable; and courts are established there with jurisdiction competent to determine the rights of the parties according to the law of Maryland, of which they have judicial knowledge. The complainant is (and should not be) subjected to prosecution before a tribunal in another state, which must ascertain the law through imperfect methods of proof; where there must be much difficulty and expense in obtaining the evidence of the witnesses; and where the legal processes have features of severity and harshness from which citizens of Maryland are protected by the constitution of the state." The case of Wabash R. Co. v. Peterson, 187 Iowa 1331, 175 N.W. 523, by the Supreme Court of Iowa is also in point, wherein it quotes the Miller case, supra.

From 28 American Jurisprudence, page 391, paragraph 205: "The power of a court of equity to restrain actions in another state or country rests on the authority vested in them over persons within the limits of their jurisdiction to enjoin them from doing inequitable acts to the wrong and injury of others, and on the power of the state to compel its own citizens to respect its laws, even beyond its own territorial limits. The court proceeds on the theory that as long as a citizen belongs to a state, he owes it obedience; and that as between states, the state in which he is domiciled has jurisdiction over his person, and his personal relations to other citizens of the state." See also paragraphs 206 and 207.

All text writers agree with the general rule that a writ will not issue on the sole ground of convenience to the parties seeking it, nor due to the difficulty and expense of procuring witnesses, but these matters will be taken into consideration in determining whether a writ should be granted. In the instant case, these factors, along with the proof that to try the suit in New York would be an undue burden upon interstate commerce, and in the absence of testimony that injury would inure to appellant, is sufficient grounds to sustain the writ.

None of the authorities quoted refer to the rights of appellee under the general venue statute, title 28, section 112, of the U.S. C.A., which reads as follows: " * * * except as provided in Sections 113–118 of this title, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant." This statute should be sufficient authority alone to grant a writ of injunction where the party complained of does not show that he would be injured by such restraint. The right to be sued in the local courts of a person's domicile is one that should be strictly adhered to. Such a right, subject to the many exceptions, perpetuates the confidence of the citizenry in the court.

For the reasons above stated, the writer respectfully dissents.