**BARTHOLOMEW COUNTY BEVERAGE COMPANY, INC. and Edna J. Howe, Defendants–Appellants,**

v.

**BARCO BEVERAGE CORPORATION, INC., Plaintiff–Appellee.**

No. 73A01–8707–CV–163.

Court of Appeals of Indiana, First District.

June 16, 1988.

Ferd Samper, Samper, Hawkins, Atz & Greuling, Indianapolis, for defendants-appellants.

Patrick W. Harrison, Beck & Harrison, William H. Stone, Columbus, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Bartholomew County Beverage Co., Inc. appeals from the Shelby Circuit Court a judgment in favor of Barco Beverage Corp., Inc. We affirm.

## FACTS

Barco Beverage Corp., Inc. (hereinafter Barco) is a family owned beer wholesale business located in Columbus, Indiana. Robert Welmer and his children operated the business. Welmer started the business in 1961. Over time, the business grew. Barco acquired a franchise to sell Lite beer by Miller and the brewery assigned the Bartholomew County area to Barco as a primary area of responsibility. When Miller Lite beer became a big seller, Barco's business expanded rapidly, and through Robert and his family's hard work and good will, Barco acquired almost all the Miller Lite beer accounts in Bartholomew County. By late 1983 Barco served seventy-two (72) of seventy-five (75) Miller Lite accounts in Bartholomew County. Barco's Miller Lite sales accounted for approximately seventy percent (70%) of Barco's total business. Due to the increased sales, Barco outgrew its original headquarters and had to build a new warehouse.

Bartholomew County Beverage Company, Inc. (hereinafter BCB) is owned and operated by Edna Howe and her children. BCB sells Budweiser, Bud Light, Busch products, Miller High Life, and Miller Lite. The record reveals that in the fall of 1983 BCB attempted to put Barco out of business by cutting the price of Miller Lite. In the fall of 1983, BCB began its attack on Barco by offering to sell Miller Lite to Barco's customers at a price that was five cents (5¢) lower than Barco's price. This tactic failed as Barco retained its Miller Lite customers. Thereafter, in late October of 1983, BCB offered Miller Lite to Barco's customers in Columbus, Indiana, at a drastically reduced price. BCB dropped the price for a case of twenty-four twelve ounce cans from Eight Dollars and Ninety Cents ($8.90) to Six Dollars and Ninety Cents ($6.90). At the same time BCB retained the higher price per case for BCB's customers not located in Columbus, Indiana. Barco's customers could not ignore the drastic price reduction offered by BCB. Thus, Barco had to either meet the price or lose customers. However, because of a required sales quota, Barco had to keep the customer's accounts or risk loss of its Miller Lite franchise. Barco lowered its Miller Lite price. Barco's business was damaged as a result of the price cuts.

On February 10, 1984, Barco filed a Verified Petition for Temporary Restraining Order alleging among other things that BCB was violating Indiana Code section 7.1–5–5–7 which prohibits price discrimination. On March 6, 1984, Barco filed an additional complaint for the damages

caused by BCB's illegal pricing practices. On May 11, 1984, prior to a scheduled hearing on Barco's request for a temporary restraining order, BCB stipulated in an agreed judgment to obey the price discrimination statutes. In February of 1987, the damage suit proceeded to trial. On March 5, 1987, a jury returned a verdict in favor of Barco for Fifty–Seven Thousand Dollars ($57,000). BCB appeals this judgment.

## ISSUES

BCB presents three (3) issues on appeal:

1. Whether the exhaustion of administrative remedies doctrine barred Barco from pursuing a suit for damages in the Shelby Circuit Court?

2. Whether the trial court erred by allowing a civil cause of action based upon a violation of a criminal statute, Indiana Code section 7.1–5–5–7,?

3. Whether sufficient evidence exists to support the judgment?

## DISCUSSION AND DECISION

*Issue One*

▮▮▮▮ BCB argues the Shelby Circuit Court should have dismissed Barco's action as barred under the doctrine of exhaustion of administrative remedies. BCB is mistaken. The doctrine which requires an aggrieved party to exhaust administrative remedies does not apply when an administrative procedure and remedy does not exist or when the remedy is impossible or fruitless and of no value under the circumstances. *Shlens v. Egnatz* (1987), Ind. App., 508 N.E.2d 44, 48, *trans. denied; Ahles v. Orr* (1983), Ind.App., 456 N.E.2d 425, 426. In the present case, BCB has not indicated and this court is unable to find the alleged administrative remedy that Barco was supposed to exhaust. Although Indiana has provided an administrative procedure and remedies for the permit process, Indiana Code sections 7.1–3–23–1 et seq., no administrative procedure exists for the compensation of persons harmed by a violation of the criminal portions of the Alcoholic Beverages Act (hereinafter Act), Indiana Code sections 7.1–5–1–1 to 7.1–5–

11–16. In fact, in the one section of the Act that mentions a remedy for persons injured due to a criminal violation, the Act gives the aggrieved party the right to seek an injunction from a circuit or superior court. Ind.Code § 7.1–3–3–17. Furthermore, the Alcoholic Beverages Commission (hereinafter Commission) is not empowered to award damages to aggrieved parties under the Act. The commission's general powers are listed in Ind.Code § 7.1–2–3–4, as follows:

> "General powers.—The commission shall have the power:
>
> (a) To hold hearings before the commission or its representative;
>
> (b) To take testimony and receive evidence;
>
> (c) To conduct inquiries with or without hearings;
>
> (d) To receive reports of investigators or other governmental officers and employees;
>
> (e) To administer oaths;
>
> (f) To subpoena witnesses and to compel them to appear and testify;
>
> (g) To issue and enforce subpoenas duces tecum;
>
> (h) To take or institute proceedings to enforce subpoenas, the rules and regulations, orders, or requirements of the commission or its representative;
>
> (i) To fix the compensation paid to witnesses appearing before the commission;
>
> (j) To establish and use a seal of the commission;
>
> (k) To establish copies of records of the commission or any other document or record on file with the commission;
>
> (*l*) To fix the form, mode, manner, time, and number of times for the posting or publication of any required notices if not otherwise provided in this title;
>
> (m) To issue letters of extension as authorized by IC 7.1–3–1–3.1; and
>
> (n) To hold permits on deposit as authorized by IC 7.1–3–1–3.5."

The Act also grants implied powers to the Commission in I.C. § 7.1–2–3–31, as follows:

"Commission and chairman.—Implied powers.—The commission and the chairman shall have, in addition to the express powers enumerated in this title, the authority to exercise all powers necessary and proper to carry out the policies of this title and to promote efficient administration by the commission."

Neither of these sections gives the Commission the power to award damages to a party who is aggrieved due to a violation of the Act. Therefore, since the Commission does not have the power and since an administrative procedure does not exist to remedy Barco for the damages BCB inflicted, the exhaustion doctrine is inapplicable. Therefore, the trial court did not err by allowing Barco to proceed with a suit for damages.

*Issue Two*

■ BCB argues next that the trial court erred by allowing Barco to base a suit on a violation of a criminal statute, Ind.Code § 7.1–5–5–7. BCB argues that since the legislature did not expressly provide for a civil cause of action, one is not available. Barco's argument fails. A civil cause of action is not precluded merely because it involves a criminal act. *Kestler v. Kern* (1891), 2 Ind.App. 488, 492, 28 N.E. 726, 728; 1 I.L.E. *Action* § 3 (1957); 1 C.J.S. Actions § 12 (1936). As stated in *Kestler,* "the almost unbroken current of authority sanctions the right in an individual who has been specially damaged by an act which is in violation of a criminal statute, to maintain an action for his damages, notwithstanding the same act may subject the wrong-doer to a penalty in a public prosecution." *Kestler,* 2 Ind.App. at 492, 28 N.E. at 728. Although *Kestler* noted a special injury requirement, the determination of whether a civil cause of action exists for the violation of a criminal statute begins with an examination of legislative intent, as is indicated in 1 C.J.S. Actions § 12:

"It has been stated that, as a general rule, where an act is enjoined or forbidden by a penal statute, a person who sustains a special injury by a breach of the duty so imposed may, notwithstand-ing defendant may be subjected to a fine or penalty, maintain an action for such injury; but this is not always necessarily so. The true rule is that the question depends upon the intention of the legislature as construed from the provisions of the particular statute; and if it appears that the duty imposed is merely for the benefit of the public, and the fine or penalty a means of enforcing the duty and punishing a breach thereof, the fine or penalty is exclusive, and a private action cannot be maintained for injury sustained by reason of the breach. If, on the other hand, it appears that the duty imposed is also for the benefit of particular individuals or classes of individuals, a private right of action arises for injury sustained by reason of the breach, by any person the statute was designed to protect, provided the injury sustained by him is a special injury different from that inflicted on the general public, and has resulted proximately from and because of the violation."

Thus, the existence of a civil cause of action depends on the legislative intent.

In the present case, the criminal statute involved is Ind.Code § 7.1–5–5–7, which provides as follows:

"Sales—Discrimination by permittee.— It is unlawful for a permittee in a sale or contract to sell alcoholic beverages to discriminate between purchasers by granting a price, discount, allowance, or service charge which is not available to all purchasers at the same time. However, this section does not authorize or require a permittee to sell to a person to whom he is not authorized to sell under this title."

Although this section does not expressly provide for a civil cause of action, an examination of the Act as a whole reveals that the legislature envisioned civil causes of action based upon criminal violations of the Act and did not intend to preclude a civil cause of action based upon a violation of I.C. § 7.1–5–5–7. Indiana Code section 7.1–5–7–8 provides the first indicator of a civil cause of action, and provides as follows:

"Recklessly furnishing alcoholic beverage to minor unlawful—Educational institutions' civil liability.—(a) It is a Class C misdemeanor for a person to recklessly sell, barter, exchange, provide, or furnish an alcoholic beverage to a minor.

(b) This section shall not be construed to impose civil liability upon any education institution of higher learning, including but not limited to public and private universities and colleges, business schools, vocational schools, and schools for continuing education, or its agents for injury to any person or property sustained in consequence of a violation of this section unless such institution or its agent sells, barters, exchanges, provides, or furnishes an alcoholic beverage to a minor."

If the legislature had not envisioned and intended a civil cause of action, and instead had intended to preclude such an action, subsection (b) would have been unnecessary. Indiana Code section 7.1–5–10–15 also supports this interpretation, and provides as follows:

"Sales to intoxicated persons.—(a) It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated.

(b) In any civil proceeding in which damages are sought from a permittee or a permittee's agent for the refusal to serve a person an alcoholic beverage, it is a complete defense if the permittee or agent reasonably believed that the person was intoxicated or was otherwise not entitled to be served an alcoholic beverage."

Again, absent a civil cause of action for the carrying out of subsection (a), subsection (b) becomes unnecessary. Finally, Indiana Code section 7.1–5–10–15.5 adds similar support to this court's conclusion that the legislature intended that a civil cause of action could be brought for a violation of the Act. Ind.Code § 7.1–5–10–15.5 provides as follows:

"Liability of person furnishing alcoholic beverage to intoxicated person.—(a) As used in this section, 'furnish' includes barter, deliver, sell, exchange, provide, or give away.

(b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

(1) The person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) The intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint."

Unless a civil cause of action existed, a section delineating the limits of liability would be unnecessary. Thus, the design of the Act indicates that the legislature intended that civil causes of action could be brought for violations of the criminal sections subject to express statutory limitations. Therefore, this court holds that a civil cause of action can be based upon and brought for the violation of I.C. § 7.1–5–5–7.

BCB argues the legislature did not intend to allow civil causes of action under the criminal portions of the Act and refers to Indiana Code section 7.1–3–3–17, which provides as follows:

"Franchise agreement—Cancellation—Injunction—Bond.—The circuit or superior court of the county in which the licensed premises of a beer wholesaler are located shall have jurisdiction to enjoin the cancellation or termination of a franchise or agreement between a beer wholesaler and a brewer in violation of IC 7.1–5–5–9. The action may be brought by a beer wholesaler or brewer who is or might be adversely affected by the cancellation or termination. The court, in granting an injunction under this section, shall provide that the brewer shall not supply the customers or territory of the beer wholesaler through servic-

ing the customers or territory through another beer wholesaler or by any other means while the injunction is in effect. An injunction issued under this section shall require the posting of proper bond against damages for an injunction improvidently granted and a showing that the danger of irrevocable loss or damage is immediate. The beer wholesaler shall continue to service the accounts of the brewer in good faith during the term of the injunction."

BCB argues this section indicates that the legislature intended to preclude civil causes of action absent a specific statutory provision. Although Ind.Code § 7.1–3–3–17 would tend to indicate that civil causes of actions are precluded absent express language, the remainder of the Act indicates a contrary intention. Furthermore, our courts clearly have indicated that civil causes of action can be premised upon a violation of the criminal provisions of the Act with or without an express statutory provision. *Gariup Construction Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224; *Picadilly, Inc. v. Clovin* (1988), Ind., 519 N.E.2d 1217; *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73; *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847; *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, *trans. denied; Lake County Beverage Co. v. 21st Amendment* (1982), Ind.App., 441 N.E.2d 1008, *trans. denied; Parrett v. Lebamoff* (1980), Ind.App., 408 N.E.2d 1344; *Jos. Schlitz Brewing Co. v. Central Beverage Co.* (1977), 172 Ind.App. 81, 359 N.E.2d 566, *trans. denied; Brattain v. Herron* (1974), 159 Ind.App. 663, 309 N.E.2d 150, *trans. dismissed.* Therefore, the trial court did not err by allowing Barco to proceed with a civil cause of action that was premised upon BCB's violation of I.C. § 7.1–5–5–7.

■ This court notes also that even if Barco could not proceed based upon I.C. § 7.1–5–5–7, a common law cause of action existed. Barco sued BCB for unfair competition based upon predatory price cutting. A valid common law cause of action exists for the tort of unfair competition. *Ham-*

*mons Mobile Homes, Inc. v. Laser Mobile Home Transport, Inc.* (1987), Ind.App., 501 N.E.2d 458, 461, *trans. denied;* 20 I.L.E. *Monopolies and Unfair Trade* § 10 (1959); 87 C.J.S. *Trade–Marks, Trade–Names, and Unfair Competition* § 240 (1954); 55 Am. Jur.2d *Monopolies, Restraint of Trade, and Unfair Trade Practices* § 696 (1971). Although the law of unfair competition has been defined as the palming off of ones goods or services as that of some one else, and the attempt thereof, *Hammons Mobile Homes* at 461, the tort of unfair competition is much broader and also includes actions for the interference with a contract or business relationship, as well as for predatory price cutting. *Johnson v. Hickman* (1987), Ind.App., 507 N.E.2d 1014, 1017–19, *trans. denied; Marsym Development Corp. v. Winchester Economic Dev. Comm'n* (1983), Ind.App., 447 N.E.2d 1138, 1143, *trans. denied* (1984), Ind., 457 N.E.2d 542; *Biggs v. Marsh* (1983), Ind.App., 446 N.E.2d 977, 983; *Cleaning and Dyeing Plant Owners Ass'n of Chicago v. Sterling Cleaners and Dyers* (1936), 285 Ill. App. 336, 351–52, 2 N.E.2d 149, 155; 87 C.J.S. *Trade–Marks, Trade–Names, and Unfair Competition* § 240. With regard to price cutting, although price cutting generally is considered a fair and welcomed part of vibrant competition, if prices are cut for the primary purpose of destroying a competing business then the price cutting is considered unfair competition. *Cargill, Inc. v. Monfort of Colorado, Inc.* (1986), 479 U.S. 104, 117–118, 107 S.Ct. 484, 493, 93 L.Ed.2d 427, 440; *Cleaning and Dyeing Plant Owners Ass'n* 285 Ill.App. at 351–52, 2 N.E.2d at 155; 87 C.J.S. *Trade–Marks, Trade–Names, and Unfair Competition* § 240. This form of unfair competition has been termed "predatory pricing", and was defined and examined by the United States Supreme Court, in *Cargill*, as follows:

"Predatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run. It is a practice that harms both competitors *and*

competition. In contrast to price cutting aimed simply at increasing market share, predatory pricing has as its aim the elimination of competition. Predatory pricing is thus a practice 'inimical to the purposes of [the antitrust] laws,' *Brunswick [Corp. v. Pueblo Bowl–O–Mat Inc.]*, 429 U.S. [477], at 488, 97 S.Ct. [690], at 697 [50 L.Ed.2d 701 (1977)], and one capable of inflicting antitrust injury."

*Cargill*, 479 U.S. at 117–118, 107 S.Ct. at 493, 93 L.Ed.2d at 440. Since Barco alleged that BCB cut prices with the intent of putting Barco out of business a valid common law cause of action for unfair competition existed. Therefore, the trial court could have allowed Barco to proceed to trial on either a statutory or common law cause of action.

*Issue Three*

■ BCB argues last that insufficient evidence existed to sustain the judgment. In reviewing for insufficiency this court is governed by a well known standard of review. This court neither reweighs the evidence nor judges witness credibility; rather this court views only evidence and inferences that are most favorable to the judgment. If substantial evidence of probative value exists to support the judgment, this court will affirm. *Kitchen Jewels, Inc. v. Beck* (1987), Ind.App., 513 N.E.2d 1246, 1248.

In the present case, the jury was instructed on the elements of the tort of unfair competition, as follows:

"*Tort of Unfair Competition*

Indiana law prohibits the tort of unfair competition by one competitor against another competitor. This tort of unfair competition includes the tort of interference with prospective business relations due to predatory pricing.

*Elements of the Cause of Action for Tort of Unfair Competition*

In order to prevail upon its claim of unfair competition the Plaintiff must prove by a preponderance of the evidence the following elements:

1. That Barco had a property interest in its license to sell Lite beer in Bartholomew County, Indiana, and

2. A valid potentiality of a business relationship but for the Defendant's interference, which interference was the result of predatory pricing;

3. That Bartholomew County Beverage intentionally cut prices of Lite beer it marketed in Bartholomew County, Indiana, and;

4. That the price cutting was for the sole purpose of causing economic injury to Barco;

5. That as a proximate result Barco suffered damages; and

6. A lack of justification for the interference.

*Predatory Pricing*

Predatory pricing is an element of the cause of action for the tort of unfair competition. Predatory pricing is defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run. To determine whether predatory pricing occurred, you must consider the appropriate measure of cost for Defendant's products, the market share in the relevant market, the market share controlled by the Defendant, the ability or lack of ability of Defendant to exclude competitors from the market, and other relevant market information. You are instructed in this case that the relevant cost to determining predatory pricing is 'marginal cost' or average cost, and such cost standard is for you to determine."

Record at 137–38. BCB argues that Barco failed to establish the element of predatory pricing. BCB argues that since BCB's expert testified that predatory pricing did not occur in this case, and since Barco's witness who testified as to marginal cost price was not an anti-trust expert, Barco failed to establish this element. BCB is mistaken and the foregoing argument amounts to nothing more than a request that this court reweigh the evidence and judge witness credibility. The evidence indicated that BCB cut prices below marginal cost price

with the intent to put Barco out of business and succeeded in damaging Barco's business. This evidence was sufficient to establish the element of predatory pricing. Therefore, sufficient evidence exists to support the elements of the tort of unfair competition, and the judgment of the trial court is affirmed.

Affirmed.

NEAL and BUCHANAN, JJ., concur.