ATTORNEYS FOR APPELLANTS
Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

Julie E. Lang
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Peter G. Tamulonis
Peter A. Velde
Eric D. Johnson
Indianapolis, Indiana



FILED
Apr 14 2010, 2:08 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S00-0812-CV-00649

ROBERT E. CARTER, JR., DIRECTOR, DNR,
AND INDIANA DEPARTMENT OF NATURAL
RESOURCES,

*Appellants (Defendants below),*

v.

NUGENT SAND COMPANY, ALICE G. JULIUS,
ANNETTA RAINES, MILDRED RAUTH,
SANDRA M. GOINS, PAULA C. GOODWIN,
ANNA J. GOODWIN, REA E. GOGAN, MELISSA
F. HAFENBREIDEL, AND PAULA C. GOODWIN,
AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF CHARLES N. GOODWIN,

*Appellees (Plaintiffs below).*

Appeal from the Marion Superior Court, No. 49D02-0710-PL-42564
The Honorable Kenneth H. Johnson, Judge

On Direct Appeal

**April 14, 2010**

**Shepard, Chief Justice.**

Landowners and lessees obtained state approval a decade ago to dig a channel from the Ohio River to a nearby lake so that they could use the lake for a sand and gravel operation. They now seek judicial relief from conditions imposed within their 1999 permits. We conclude that that the present action should be dismissed for failure to exhaust administrative remedies.


**Facts and Procedural History**

Alice G. Julius and others (collectively, "landowners") own 156.2 acres of land adjoining the Ohio River in Utica, Indiana. Nugent Sand Company is a Kentucky partnership engaged in, among other things, the business of salt, sand, and gravel stockpiling and transportation. In May 1999, Nugent Sand leased the 156.2 acres for use in its commercial barge operations. The acreage contained a 50-acre man-made body of water, standing about 200 feet inland from the Ohio River. (App. at 11, 48.)

Nugent sought and acquired a permit from the Department of the Army, Corps of Engineers, because the excavation would connect the lake to the Ohio River, a navigable waterway. It also obtained certificates of regulatory approval from the Indiana Department of Natural Resources because the construction would take place in a floodway and involved construction of an access channel. Among the conditions contained in DNR's granted certificates were provisions mandated by a section of the Indiana Code: "If a channel will: (A) connect to a navigable river or stream; and (B) create additional water areas that will be connected to the navigable river or stream; dedicate any water created to general public use." Ind. Code § 14-29-4-5(2) (2008); (App. at 95.)

Following these approvals, Nugent Sand spent substantial sums to facilitate its operations on the leased premises. It excavated a channel through the Ohio River's bank to the man-made lake to accommodate a commercial barge operation, which included navigating towboats and

2

barges up to 195 feet in length and 35 feet in width through the lake. It also built a dock in the lake for unloading barges.

Around 2005, boaters began entering the lake for recreational purposes through the excavated channel. Many of the boaters created traffic and barge obstructions for Nugent Sand's operations by tying boats together, swimming in the lake, and engaging in various forms of raucous behavior. Nugent Sand posted and attempted to enforce "No Trespassing" and "Danger Barge Operations" signs at the entrance of the channel. The efforts to remove these unauthorized persons were largely unsuccessful. Third-party harbor boats subsequently began to decline to work in the lake, and a number of Nugent's own employees became apprehensive because of the heightened risk of property damage and serious bodily injury.

Nugent Sand contacted DNR about the unauthorized boaters. Specifically, it complained that people and boats prevented it from "conducting business operations on its own schedule," that it had scheduled nighttime barge operations "at additional costs and expenses," and further warned that such unauthorized traffic posed a serious danger to Nugent and the public at-large. (App. at 15–17, 179.) DNR replied that the waters were considered public and that the DNR did not intend to take action. DNR employees provided similar statements to citizens who called to inquire about the status of the lake. Nugent Sand then complained that the information regarding the DNR's position spread, prompting a further increase in visiting boaters.

Nugent Sand requested a meeting with Robert Carter, DNR Director. Although such a meeting was held and further discussions occurred with the DNR's Deputy Director and General Counsel, the Department ultimately declined to alter its position about public access.

Nugent Sand and the landowners filed a complaint against DNR for declaratory and injunctive relief, seeking a declaration that the lake and channel were private property and an injunction barring DNR from informing that the lake and channel were open to the public. DNR moved to dismiss, contending that Nugent failed to exhaust its administrative remedies. The trial court denied the motion.

Nugent Sand moved for summary judgment, arguing essentially that the lake and the channel were private property from which they could exclude the public and that any attempt to force them to dedicate the property for public use without compensation would be an unconstitutional taking. (App. at 245–276.) DNR's response contended that Nugent exchanged providing public access to the lake and channel as a condition for digging the channel, and the public gained access to the property by virtue of Indiana statute as well as various common law principles. (App. at 290–313.) On October 28, 2008, the trial court agreed with Nugent Sand and entered a permanent injunction.

As the trial court held unconstitutional one of the statutes under which DNR had acted during the permitting process, DNR filed an appeal directly with this Court. Ind. Appellate Rule 4(A)(1)(b).

## The Takings Claim

Whether there is a winning takings claim at the heart of Nugent Sand's situation is doubtful. To be sure, we have known since at least 1922 that a taking of private property within the meaning of the Fifth Amendment may occur even if the government has not actually taken possession of the land. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922). As Justice Holmes wrote, "if regulation goes too far it will be recognized as a taking." Id. at 415. The general standard for assessing whether a regulatory taking of private property for public purpose within the meaning of the Fifth Amendment remains the one outlined by the Court in Penn Central Transp. Co. v. New York, 438 U.S. 104 (1978). A regulation effects a taking of private property only when it deprives an owner of all or substantially all economic or productive use of the property. Id. at 127. It seems apparent that this standard is not met by the situation that gives rise to this litigation.

Even where there has not been a total deprivation, however, a Fifth Amendment violation may occur when the government requires that an owner dedicate an easement allowing public access as a condition to obtaining a development permit. Such an exaction must be roughly

4

proportional both in nature and extent to the impact of the development for which the permit is required. Lingle v. Chevron, 544 U.S. 528 (2005). While this would be a more plausible claim in the present situation, it is difficult to see that extracting public access as a condition to authorizing a major water project connecting to one of the nation's great rivers is not proportional and reasonably connected to the enterprise contemplated.

Doubtful as the takings claim may be, we conclude that the constitutional question need not be adjudicated in light of DNR's contention that it was entitled to a dismissal.

## Exhaustion of Administrative Remedies

The Department urges that it was entitled to a dismissal because Nugent Sand failed to exhaust available administrative remedies.

The basis of this argument is that remedies have existed and that the permits themselves informed Nugent Sand of the processes by which it could appeal any condition contained in the two permits. The permits notified Nugent of the procedures available under 312 Ind. Admin. Code 3-1, which affords a person the opportunity to request for a "Quasi-declaratory judgment" under 312 I.A.C. 3-1-15 by requesting the department "to interpret a statute or rule administered by the department as applicable to a specific factual circumstance." (See App. at 92, 98, Notices of Right to Administrative Review.) If the person seeking the request is aggrieved by the response, that person may file a petition for administrative review under Ind. Code § 4-21.5-3. 312 I.A.C. 3-1-15(d). "This section does not excuse a person from a requirement to exhaust another administrative remedy provided by statue or rule." 312 I.A.C. 3-1-15(e).

DNR maintains that instead of filing the present court action, Nugent should have undertaken these remedies for an interpretation of the dedication to public use requirement of Ind. Code § 14-29-4-5(2) and the application of this statue to the property at issue.

5

"It has long been Indiana law that a claimant within an available administrative remedy must pursue that remedy before being allowed access to the judicial power." Advantage Home Health Care, Inc. v. Ind. State Dept. of Health, 829 N.E.2d 499, 503 (Ind. 2005) (citations omitted). Our General Assembly has codified this general jurisprudential rule of administrative law through Ind. Code § 4-21.5-5-4, which provides: "A person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged[.]"

This Court has articulated the reasoning behind the policy of requiring pursuit of administrative remedies before resort to the courts. In Turner v. City of Evansville, we said:

> Premature litigation may be avoided, an adequate record for judicial review may be compiled and agencies retain the opportunity and autonomy to correct their own errors. Even if the ground of complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion may still be required because 'administrative action may resolve the case on other grounds without confronting broader legal issues.'

740 N.E.2d 860, 862 (Ind. 2001) (quoting State Bd. of Tax Comm'rs v. Montgomery, 730 N.E.2d 680, 684 (Ind. 2000)). Where such an administrative remedy is readily available, filing a declaratory judgment action is not a suitable alternative. Advantage Home Health Care, Inc., 829 N.E.2d at 503.

Nugent Sand maintains it had no notice that it might need to invoke administrative processes because the terms imposed by DNR–requiring Nugent Sand to dedicate the pre-existing lake to general public use–are not set forth in the approvals, and it was only after the period for appeal expired that it became clear that DNR was going to declare all additional waters created by the project to be declared to public use. (Appellees' Br. at 33.) Nugent Sand cites Bartholomew County Beverage v. Barco Beverage, 524 N.E.2d 353 (Ind. Ct. App. 1988) for support.

In Barco, two alcohol distributors, Barco and BCB, became engaged in a competitive pricing competition and Barco suffered losses after drastically reducing its prices. Id. at 354.

6

Barco filed an action, claiming among other things that BCB engaged in illegal pricing practices, and the trial court returned a jury verdict in favor of Barco.  Id. at 354–55.

On appeal, BCB argued that the court should have dismissed the action as barred under the doctrine of exhaustion.  The Court of Appeals disagreed, and held that the trial court did not err by allowing Barco to proceed.  Id. at 356.  The court reasoned that the exhaustion doctrine was inapplicable because no administrative procedure exists for persons harmed by a violation of the criminal portions of the Alcoholic Beverages Act, Ind. Code §§ 7.1-5-1-1 to 7.1-5-11-16, observing that the Alcoholic Beverages Commission did not have the power to award damages to a party aggrieved under the Act.  Id. at 355–56.

By contrast, Nugent Sand had an administrative remedy.  Indeed, each permit contained information about how to appeal.  (See App. at 91–102.)  Moreover, the terms imposed by DNR, "requiring all additional waters created by this project be dedicated to the public as required under IC-14-29-4," were explicitly set forth in the "Special Conditions" section of the approval documents.  (See App. at 94–95, 100–101.)  As for whether this language was adequate to alert Nugent to the fact that it was giving up exclusive use by virtue of obtaining the permits, there might have been some basis for debating whether the statute and the permit conditions applied to the channel and the lake or just to the channel.  But Nugent has forcefully insisted that it gave up nothing at all ("even a single boater getting 'in the way'. . . is an unacceptable interference," Appellees' Br. at 26) when the statute is plain that at least the channel ("all additional waters") were being dedicated to public use.  DNR gave plain enough notice.

**Other Arguments Against Dismissal**

Nugent Sand also contends that the trial court had discretion to dismiss the present case or retain it, citing Scales v. State, 563 N.E.2d 664 (Ind. Ct. App. 1990).  There, the trial court dismissed a declaratory judgment filed in the midst of an administrative appeal from an order to cease coal mining operations.  The Court of Appeals affirmed the dismissal, saying that the trial court had not "abused its discretion."  Id. at 665.  While Nugent is correct to cite this phrase as

7

part of the standard of review, the larger picture is that courts do not generally entertain requests for declaratory relief "if the result is to bypass available administrative procedures." Id. at 666–67. Dismissal was the right result in Scales, and that is the appropriate outcome here, where the available process was ignored a decade ago.[1]

Likewise, Nugent has argued that its case should not be subject to dismissal because at least one of the issues (here, statutory construction or constitutional violations) falls within the "primary jurisdiction" of the courts rather than with the government agency, citing Austin Lakes Joint Venture v. Avon Utilities, Inc., 648 N.E.2d 641 (Ind. 1996). Austin Lakes, however, was a lawsuit for breach of contract and fraud between two private parties. This Court noted that "we believe the doctrine [of primary jurisdiction] will generally be found not applicable when one of the parties before the court is the agency to which the issue would be referred." Id. at 648. Here, the defendant is DNR, the agency that imposed the permit condition of dedication of waters to public use.

## Conclusion

We reverse the trial court and remand with directions to grant the Department's motion to dismiss.

Sullivan, Boehm, and Rucker, JJ., concur. Dickson, J., concurring in result.

---

[1] The Scales court relied on Thompson v. Medical Licensing Bd., 180 Ind. App. 333, 346, 389 N.E.2d 43, 51 (1979). Scales, 563 N.E.2d at 666. There, the Court of Appeals said: "Allowing the Declaratory Judgment Act to be used as a vehicle to bypass the administrative process created by statute can seriously weaken the effectiveness of that process."