**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANTS:

**ROSEMARY L. BOREK**
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**RYAN P. DILLON**
Law Office of Ryan P. Dillon, P.C.
Franklin, Indiana

FILED

Nov 08 2012, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

THE CITY OF SHELBYVILLE, INDIANA and    )
SHELBYVILLE BOARD OF WORKS AND          )
SAFETY,                                 )
                                        )
    Appellants-Defendants,         )
                                        )
       vs.                   )    No. 73A01-1203-PL-98
                                        )
FRANK R. and SHIRLENE SUNDVALL,         )
                                        )
    Appellees-Plaintiffs.          )

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Kevin M. Barton, Special Judge
Cause No. 73C01-0911-PL-18

**November 8, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

The City of Shelbyville, Indiana (the City), the Shelbyville Board of Works and Safety (Board of Works), Scott Furgeson (the Mayor), R. Tim Barrick and Don Baumgartner in their capacity as members of the Board of Works, Tom Debaun as the Director of the Shelbyville Building Commission, and Tammy Cornelius in her capacity as the Deputy Building Commissioner (collectively, the Defendants),[1] appeal from the trial court's order partially denying the City's motion for summary judgment in an action initiated by Frank R. (Frank) and Shirlene Sundvall (collectively the Sundvalls). The following issues are presented for our review in this interlocutory appeal:

1.      Can the Sundvalls challenge building code enforcement orders issued under the Unsafe Building Law via an action for inverse condemnation when the orders were not first challenged administratively?

2.      Does a building code enforcement order requiring tenants to vacate the premises until repairs are made to mobile home units such that the property complies with the building code or remove the units constitute a "taking" of property under Indiana's inverse condemnation statute?

We reverse and remand.

The City's building commissioner enforces Chapter 158 of the City's Code of Ordinances entitled "Unsafe Buildings." *Appellant's Appendix* at 308. Section 158.02 adopts the State of Indiana's Unsafe Building Law, which is codified at Ind. Code Ann. chap. 36-7-9 (West, Westlaw current with all 2012 legislation). *Appellant's Appendix* at 310. The building commissioner's office employs two deputy building commissioners, one of whom is Cornelius. The Sundvalls own the Shelby Mobile Home Park, which in November of 2007 consisted of twenty mobile home units used as residential rental properties. On October 12,

---

[1] The only defendants seeking relief in this appeal are the City and the Board of Works. Pursuant to Indiana

2007, Robert Lewis of the Shelby County Health Department contacted Cornelius about a complaint he had received regarding Unit 13 of the Shelby Mobile Home Park. Lewis provided photographic evidence of extensive mold damage.

Cornelius and Lewis went to the property and looked around the exterior of Unit 13. While there, tenants in other units told the two about problems in their mobile home units and invited Cornelius and Lewis to examine the conditions. As a result, Cornelius concluded that all of the units in the Shelby Mobile Home Park would need to be formally inspected.

Cornelius contacted Frank and advised him of the complaint. She then sent a letter to the Sundvalls advising them that an inspection was scheduled for October 29, but that they could call her office to reschedule if necessary. When the Sundvalls failed to appear for the scheduled inspection, Cornelius went to the property on October 30 and found the door to Unit 17 unlocked. After she briefly looked inside, she secured the door and placed signs on Units 13 and 17 which indicated that the units were unfit for human habitation. Later, on November 9, Cornelius and Lewis met with the Sundvalls' son, Frank Sundvall, Jr., took pictures, and showed him numerous violations in Unit 17.

An inspection of all of the units ultimately took place on November 14. Cornelius advised Lewis that she was going to inspect the units on that date. Lewis and various Shelby County officials, in addition to a representative of the Salvation Army, met Cornelius at the Shelby Mobile Home Park. All but two of the units were inspected that day, and the remaining two were inspected on November 15 and November 16.

---

Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

During the course of the inspections, Cornelius observed major violations of Shelbyville's Unsafe Building Ordinance. In particular, the bathtub in one of the units was supported by car jacks, and in others the flooring was soft in spots. Mold damage was also observed. Due to the nature of the violations, Cornelius asked to meet with DeBaun, the Mayor, and the city attorney to determine whether they should take emergency action to have the occupied units vacated.

On the afternoon of November 19, Cornelius called Frank and told him that the status of the mobile home park would be discussed at the Board of Works meeting scheduled for that night and invited him to attend. Prior to regular meetings, the Board of Works holds a pre-meeting and a notice pursuant to Indiana's Open Door Act is posted for that pre-meeting. The pre-meeting is held in order to discuss the organization of the regular meeting, and the pre-meeting is open to the public. The Sundvalls attended the pre-meeting and there was a discussion of the mobile home park. The Sundvalls were shown pictures taken during the inspection and were given the opportunity to speak. No action was taken at the pre-meeting.

The regular meeting was held immediately thereafter and the Shelby Mobile Home Park was discussed. When the Sundvalls were given an opportunity to speak, Frank stated that the mobile home units were not in the state of disrepair suggested by the building commissioner. Frank asked that the residents be allowed to move into other properties owned by him, though, and that he be given the opportunity to make repairs. The Board of Works voted to order the properties vacated in ten days. The tenants were given notice to vacate the units and all of the units were eventually vacated.

The Sundvalls did not appeal the emergency order pursuant to I.C. § 36-7-9-9[2] (West, Westlaw current with all 2012 legislation), and argue that they did not need to do so. Instead, the Sundvalls filed suit in the United States District Court for the Southern District of Indiana on December 3, 2007, alleging takings claims under the Fifth Amendment to the United States Constitution and various federal and state law claims including claims under article I, sections 12 and 21 of the Indiana Constitution. On September 30, 2008, the federal court dismissed the federal takings claims without prejudice on the ground that those claims were not yet ripe for review. The state constitutional claims were dismissed with prejudice based on waiver grounds.

Cornelius inspected the property again on June 17, 2008, but because of an emergency medical leave, submitted her report on September 12, 2008. The report detailed the further deterioration of the property and the many violations of the Unsafe Building Ordinance. She sent that report to the Sundvalls by certified mail. The violations consisted of soft, spongy, or rotted flooring, holes in the ceiling that were repaired by duct tape, rodent feces, black mold and mildew, water damage, and a tree growing in the carpet of one of the mobile home units.

The Sundvalls were given the opportunity to submit written recommendations for the repair of the units and to obtain the necessary permits or to remove the units from the

---

[2] This statute provides that a person required to vacate an unsafe building may challenge the order in an emergency court proceeding. I.C. § 36-7-9-8 (West, Westlaw current through all 2012 legislation) provides for judicial review of an enforcement action under Ind. Code Ann. § 36-7-9-7(d) or (e). It appears from the record that the parties' arguments pertain to the review set forth in I.C. § 36-7-9-8.

property.  The report further indicated that the Sundvalls needed to obtain an evaluation by a structural engineer of all homes manufactured before July 1976.  The report further provided for a November 10, 2008 date for the completion of all repairs and removals.  The Sundvalls were advised that the failure to comply with the completion date could result in fines or action by the City to abate the nuisance.  The report concluded with an advisement of their right to appeal the order and to appear before the Board of Works.  The appeal date was September 30, 2008 at 8:30 a.m., however, the Sundvalls did not appeal or appear before the Board of Works on September 30.  Additionally, the Sundvalls did not proceed under I.C. § 36-7-9-8 for judicial review of the order.

In October of 2008, the Sundvalls removed nine of the units from the park, and on October 24 submitted a report containing a structural engineer's recommendation of repairs to the remaining units.  An attorney for the Sundvalls submitted a proposed schedule of repairs and a request for a three-month extension of time during which to complete the repairs.  At its November 12, 2008 meeting, the Board of Works voted to suspend the deadline for completion of the repairs and continued the matter for further action.  Frank and his attorney appeared before the Board of Works on November 17, 2008, and indicated that he planned on saving only two of the units.  DeBaun recommended that the Board of Works suspend action on the mobile home park until December 12, 2008, and the Board of Works followed DeBaun's recommendation.  The Sundvalls removed one of the units and the remaining unit ultimately passed inspection and was rented to tenants.

On November 13, 2009, the Sundvalls filed a complaint against the City, the Board of Works, the Mayor, individually and in his official capacity, Barrick and Baumgartner

6

individually and in their capacity as members of the Board of Works, and Debaun and Cornelius, both individually and in their official capacities. The Sundvalls later amended their complaint in which they asserted twenty counts of inverse condemnation, nineteen counts of conversion, a violation of the Indiana Constitution, and one count seeking damages pursuant to the Crime Victim Statute, Ind. Code Ann. § 34-24-3-1(West, Westlaw current with all 2012 legislation) alleging the crime of intimidation by threatening fines and refusing to grant an extension of time to repair units on the Sundvalls' property.

The Defendants filed a motion for summary judgment and the parties tendered materials and briefs in support of and in opposition to the motion. On August 24, 2011, the trial court issued its order granting in part and denying in part the Defendants' motion for summary judgment. In particular, the trial court granted summary judgment on the conversion, state constitutional, and treble damages claims and dismissed all claims against the defendants individually. The trial court denied summary judgment on the inverse condemnation claims against the City and the Board of Works. The City and the Board of Works filed a motion for certification of the interlocutory order, which was granted after a hearing on that motion. This Court granted the City and the Board of Works's petition to accept jurisdiction over the interlocutory appeal from the trial court's order and this appeal ensued.

Initially, we note that the trial court's decision on summary judgment "enters appellate review clothed with a presumption of validity." *Malone v. Basey,* 770 N.E.2d 846, 850 (Ind. Ct. App. 2002). Nevertheless, summary judgment is appropriate only when there are no

genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853 (Ind. 1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter,* 596 N.E.2d 1369 (Ind. 1992).

We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. T. R. 56(C) & (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Grp, Inc.,* 575 N.E.2d 630 (Ind. 1991). Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664 (Ind. 1997).

Here, the trial court included in its summary judgment order specific findings of fact and conclusions of law. Specific findings and conclusions by the trial court are not required; and, although they offer valuable insight into the trial court's rationale for the judgment as well as facilitate our review, we are not limited to reviewing the trial court's reasons for

granting or denying summary judgment. *Bernstein v. Glavin,* 725 N.E.2d 455 (Ind. Ct. App. 2000), *trans. denied.*

1.

The City and the Board of Works appeal from the portion of the trial court's order denying their motion for summary judgment. They contend that because the Sundvalls did not seek judicial review of the enforcement orders under the Unsafe Building Law, they failed to exhaust their administrative remedies concerning those property regulations. As such, they argue the Sundvalls have waived the right to pursue their inverse condemnation claims, and the trial court erred by denying summary judgment on this basis.

In denying the motion for summary judgment as to the inverse condemnation counts against the City and the Board of Works, the trial court found that the Sundvalls' cause of action for inverse condemnation was not barred because of their failure to appeal the decision of the Board of Works. In particular, the trial court found as follows:

> 23.     Defendants argue that inasmuch as the Plaintiffs did not bring an action for judicial review of Defendant's enforcement action within ten (10) days pursuant to Indiana Code 36-7-9-8, Plaintiff's action for inverse condemnation is subject to bar. Judicial review of enforcement and an action in inverse condemnation are separate matters. The fact that Plaintiffs may acquiesce in the decision of the governmental body does not mean that a taking has not occurred or that a property owner has waived the property owners' constitutional rights for compensation.

*Appellant's Appendix* at 841. The trial court also denied the motion for summary judgment as to the inverse condemnation counts on the basis that there was a material issue of fact as to whether a taking had occurred. The trial court supported its decision by stating the following:

9

26.     As noted by Defendants, government is permitted to regulate without a taking of property occurring when the property owner retains possession of the property. Only when the property owner is deprived of all or substantially all economic or productive use of the property does a taking occur. Carter v. Nugent Sand Co., 925 N.E.2d 356, 359 (Ind. 2010). However, regulation can provide a basis for a taking claim. See, 13-79E Powell of Real Property Sec. 79E,03 (2011).

*Id.*

In *Carter v. Nugent Sand Co.*, 925 N.E.2d 356 (Ind. 2010), landowners had obtained permits in 1999 approving their request to dig a channel from the Ohio River to a nearby lake so that the lake could be used for a sand and gravel operation run by Nugent Sand. A term of the permits, which was mandated by statute, provided that any water created be dedicated to general public use. The channel was excavated to accommodate a commercial barge operation. In 2005, boaters began entering the lake for recreational purposes by way of the recently-created channel. The additional boaters, however, hindered the sand and gravel operation and Nugent Sand placed warning signs purporting to prohibit trespassing by the recreational boaters.

Ultimately Nugent Sand contacted the Department of Natural Resources about the unauthorized boaters. DNR responded that the channel constituted public waters and that DNR would not take action. Nugent Sand then filed a complaint against DNR seeking a declaration that the lake and channel were private property and enjoining DNR from informing the public that the lake and channel were open to the public. DNR filed a motion to dismiss based upon a failure to exhaust administrative remedies, but the trial court denied the motion. Nugent Sand then moved for summary judgment arguing that the lake and channel were private property and that to require the company to open up the channel and

10

lake to the public would constitute an unconstitutional taking. DNR responded that Nugent Sand had exchanged public access to the lake and channel for permission to dig the channel. The trial court agreed with Nugent Sand and entered a permanent injunction. DNR appealed the trial court's decision.

Without deciding whether a taking had occurred, the Supreme Court held that DNR was entitled to a dismissal because Nugent Sand had not exhausted its administrative remedies. DNR argued that Nugent Sand should have sought administrative review seeking an interpretation of the dedication to public use requirement and its application to the property at issue. The Supreme Court agreed with DNR, reversed the trial court's order, and held that Nugent Sand had an administrative remedy and was explicitly alerted about the requirement of dedication to the public of all waters created by the project.

In the present case, the Sundvalls argue that they were not required to seek administrative review of the enforcement orders because 1) they had filed an action for injunctive relief in federal court; 2) the City failed to comply with the Unsafe Building Code and was acting in an invalid manner; 3) that to force compliance with the ten-day appeal deadline following the issuance of the order would compel an absurd result; and 4) the Sundvalls were excused from the requirement to exhaust their administrative remedies because seeking the remedies would be futile. The Sundvalls argue that the City's actions constituted a compensable taking because the forcible closing of the Sundvalls' business was not a valid exercise of the City's police powers.

Under the Administrative Orders and Procedures Act (AOPA) a person may file a petition for judicial review only after exhausting all administrative remedies within the

11

agency whose action is being challenged. Ind. Code Ann. § 4-21.5-5-4 (West, Westlaw current with all 2012 legislation). Courts on review have consistently emphasized the need to complete administrative proceedings prior to resorting to judicial review. *Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979 (Ind. 2005). Strong policy reasons support the exhaustion doctrine. The Supreme Court stated the following in *Austin Lakes Joint Venture v. Avon Utils. Inc.*, 648 N.E.2d 641, 644 (Ind. 1995):

> The exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action . . . and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review.

(internal quotation omitted).

The trial court was correct in noting that inverse condemnation is different from an appeal from an enforcement order. For example, an inverse condemnation action requires: "(1) a taking or damaging; (2) of private property; (3) for public use; (4) without just compensation being paid; and (5) by a governmental entity that has not instituted formal proceedings." *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010)(quoting 29A C.J.S. Eminent Domain §560 (2007)). The proposition that a taking of private property within the meaning of the Fifth Amendment may occur even in instances where the government has not taken possession of the land is longstanding. *Carter v. Nugent Sand Co.*, 925 N.E.2d 356. Where an action regulating property goes too far, it will be recognized as a taking. *Id*. On the other hand, a challenge from an action taken by a hearing authority must

12

be made by any person who has a substantial property interest in the unsafe premises or by a person to whom the order was issued requesting judicial review of the findings of fact and action taken by the hearing authority. I.C. § 36-7-9-8.

In their complaint against the City and the Board of Works, and in their responsive brief in this appeal, the Sundvalls allege as the basis for their inverse condemnation claim that they "did not ever receive a copy of the order that they could appeal from. . . .[and that the City cited] a different appeals process with a deadline that would effectively waive any appeal right under the Unsafe Building Law. . . . Invalid and illegal enforcement orders requiring property to be vacated or removed can and are in fact takings by municipalities and denials of due process." *Appellees' Brief* at 8-9. In essence, although denominated as counts alleging inverse condemnation, the complaint challenges the propriety of the actions of the City and the Board of Works. On appeal, the Sundvalls maintain that the City and the Board of Works acted improperly and that their actions were invalid. Based on that premise, they contend that they have established a taking by the City without just compensation.

There are several problems with this argument. First, the filing of the complaint in federal court is not the functional equivalent of an appeal from the enforcement order. The statute explicitly states that an appeal from an action involving the Unsafe Building Law is subject to review by the circuit or superior court of the county in which the unsafe premises are located. I.C. § 36-7-9-8.

Further, although there may be a genuine issue of material fact with respect to whether there was a taking by the City and the Board of Works, the basis of the Sundvalls' claim is that the actions of the City and the Board of Works were illegal and thus, invalid. The

13

Sundvalls were required to challenge the validity of the actions of the City and the Board of Works by first exhausting their administrative remedies. The Sundvalls cannot argue both that the actions by the City and the Board of Works were invalid *ergo* a *de facto* taking, and that the denial of summary judgment was proper because there are genuine issues of material fact about whether there was a taking without compensation.

The Sundvalls had the opportunity to appeal from the enforcement orders, but chose not to pursue such appeal. In fact, they attempted to comply with the orders they now contend were invalid and excessive. Without pursuing a challenge of those orders, they are prohibited from using alleged defects in the actions of the City and the Board of Works to advance their claim of inverse condemnation. The City and the Board of Works were entitled to summary judgment on the basis that the Sundvalls failed to exhaust their administrative remedies prior to filing suit.

2.

Because of our resolution of the first issue, we need not reach a determination of the second issue presented on appeal, namely, whether there was a taking.

Reversed and remanded.

BROWN., J. and PYLE, J., concur.